FILED
CLERK, U.S. DISTRICT COURT

JUL 23 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2014 Grand Jury

CR No. 14- **CR 14 00429**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) |
| JAMES GUTIERREZ, | ) |
| aka "Chemo," | ) |
| RICHARD MICHAEL SANCHEZ, | ) |
| aka "Pitbull," | ) |
| ROBERT RODRIGUEZ, | ) |
| aka "Mosca," | ) |
| KENNETH COFER, | ) |
| aka "Shady," | ) |
| LOUIS ARMANDO RUIZ, | ) |
| aka "Tall Luis," | ) |
| aka "Mike Lopez," | ) |
| JOHN RIVERA, JR., | ) |
| aka "Beetle," | ) |
| MARCO GARCIA, | ) |
| aka "Sleepy," | ) |
| LENORE JARA, | ) |
| MARIE GUTIERREZ, | ) |
| JOHNNY MATA, | ) |
| aka "Minor," | ) |
| JOSE SALAS, | ) |
| aka "Violent," | ) |
| aka "Eddie Boy," | ) |
| CHRISTIAN LAFARGO, | ) |
| aka "Bossy," | ) |
| RICHARD BALLESTEROS, | ) |
| aka "Smiley," | ) |
| RAYMOND LOPEZ, | ) |
| aka "Loco Ray," | ) |
| | ) |

**I N D I C T M E N T**

[18 U.S.C. § 1962(d): Racketeer
Influenced and Corrupt
Organizations Conspiracy;
18 U.S.C. § 1959: Violent
Crime in Aid of Racketeering;
21 U.S.C. § 846: Conspiracy
to Possess with Intent to
Distribute and Distribute
Controlled Substances;
21 U.S.C. §§ 841(a)(1),
841(b)(1)(A), 841(b)(1)(B):
Possession with Intent to
Distribute and Distribution
of Controlled Substances;
18 U.S.C. §§ 924(c)(1)(A),
(c)(1)(B)(ii), (j)(1): Possess,
Use, Carry, Brandish, and/or
Discharge a Firearm in
Furtherance of, and During and
in Relation to, a Crime of
Violence or Drug Trafficking
Crime; 18 U.S.C. § 922(g)(1):
Felon in Possession of a
Firearm/Ammunition; 18 U.S.C.
§ 922(g)(5): Illegal Alien in
Possession of a Firearm; 26
U.S.C. § 5861(d): Possession of
Unregistered Firearms; 18 U.S.C.
§ 1956(h): Conspiracy to Launder
Money; 8 U.S.C. §§ 1326(a),
(b)(2): Illegal Alien Found in
the United States Following

JM: VOCS

```
 1  JOSE LUIS GARCIA,              )   Deportation; 18 U.S.C.
        aka "Lil Azteca,"          )   §§ 924(d), 963, 982(a)(1),
 2  ARNOLD MACHADO,                )   21 U.S.C. § 853, 26 U.S.C.
        aka "Chunks,"              )   § 5872, and 28 U.S.C. § 2461(c):
 3  WILLIAM MCCORMICK,             )   Criminal Forfeiture]
        aka "Munchie,"             )
 4  RAFAEL LOMELI,                 )
        aka "Pelon,"               )
 5  RUBEN TRINIDAD,                )
        aka "Turk,"                )
 6      aka "E-Loc,"               )
    MICHELLE VICTORIA CORTEZ,      )
 7      aka "Dimples,"             )
    BERNADETTE CORTEZ,             )
 8      aka "Smiley,"              )
    ENRIQUE LOPEZ,                 )
 9      aka "Kiki,"                )
        aka "Ricky,"               )
10  MARK JURADO,                   )
        aka "Marco,"               )
11  VINCENT CARLOS VALENCIA,       )
        aka "Solo,"                )
12  GUSTAVO MUNOZ,                 )
        aka "Topo,"                )
13  ANTHONY GOMEZ,                 )
        aka "Kirby,"               )
14      aka "Chente,"              )
    ALFRED BESERRA,                )
15      aka "Enemy,"               )
    RICHARD CASTRO RODRIGUEZ,      )
16      aka "Turtle,"              )
        aka "Richy Boy,"           )
17  SERGIO CORDERO,                )
        aka "Bam Bam,"             )
18  DANNY CADENA,                  )
        aka "Serio,"               )
19  ANGEL HERNANDEZ,               )
        aka "Gangster,"            )
20  RICHARD ANTHONY PONCE,         )
        aka "Ricky Boy,"           )
21  KARL EUGENE BOWERS,            )
        aka "Chino,"               )
22  MARK JEREMY SALAZAR,           )
        aka "Huero,"               )
23  MICHAEL SIERRA,                )
        aka "Mellow,"              )
24  ANGELICA CASTELLANO,           )
    MELQUIADES SANCHEZ,            )
25      aka "Pelon,"               )
    PEDRO SANCHEZ,                 )
26      aka "Toro,"                )
    MANUEL RAMOS,                  )
27                                 )
                                   )
28                                 )
                                   )
```

2

SALVADOR HERNANDEZ,           )
    aka "Tiburon," and        )
HIRAM RAMIREZ,                )
    aka "Tijuas,"             )
                              )
              Defendants.     )
                              )

TABLE OF CONTENTS

GENERAL ALLEGATIONS:  THE RACKETEERING ENTERPRISE..............5

BACKGROUND ON THE EL MONTE FLORES GANG........................5

THE MEXICAN MAFIA'S AUTHORITY OVER AND RELATIONSHIP WITH

THE EL MONTE FLORES GANG.....................................12

PURPOSE OF THE ENTERPRISE....................................14

THE MEANS AND METHODS OF THE ENTERPRISE......................15

COUNT ONE (18 U.S.C. § 1962).................................17

COUNTS TWO THROUGH SIX (VICAR: 18 U.S.C. § 1959).........83-88

COUNT SEVEN (21 U.S.C. § 846)................................89

COUNTS EIGHT through TWENTY-SIX (21 U.S.C. § 841)........95-113

COUNTS TWENTY-SEVEN through THIRTY-SEVEN

(18 U.S.C. § 924)........................................114-24

COUNTS THIRTY-EIGHT through FIFTY-FIVE (18 U.S.C. § 922)..125-49

COUNTS FIFTY-SIX through FIFTY-EIGHT (26 U.S.C. § 5861)...150-52

COUNT FIFTY-NINE (18 U.S.C. § 1956).........................153

COUNTS SIXTY through SIXTY-TWO (8 U.S.C. § 1326).........156-58

FORFEITURE ALLEGATION ONE...................................159

FORFEITURE ALLEGATION TWO...................................161

FORFEITURE ALLEGATION THREE.................................163

FORFEITURE ALLEGATION FOUR..................................165

1    The Grand Jury charges:

2                          GENERAL ALLEGATIONS

3        1.   At all times relevant to this Indictment, the criminal

4    organization known as the El Monte Flores street gang (the "El

5    Monte Flores gang" or "EMF") operated in the Central District of

6    California and elsewhere.  The El Monte Flores gang, including

7    its leaders, members, and associates, constitutes an

8    "enterprise," as defined by Title 18, United States Code,

9    Section 1961(4), that is, a group of individuals associated in

10   fact, although not a legal entity.  The enterprise engages in,

11   and its activities affect, interstate and foreign commerce.  The

12   enterprise constitutes an ongoing organization whose members

13   function as a continuing unit for a common purpose of achieving

14   the objectives of the enterprise.

15   A.   BACKGROUND OF THE EL MONTE FLORES GANG

16       2.   The El Monte Flores gang is a multi-generational

17   street gang that is believed to have been formed in the 1960's.

18   The name of the gang, "El Monte Flores," originates from the Las

19   Flores Barrio, so named for the flower fields in the area, that

20   was located in the City of South El Monte.  "Las Flores"

21   translates to "the flowers" in Spanish.  The El Monte Flores

22   gang claims as its territory the entire cities of El Monte and

23   South El Monte, which are both located within the San Gabriel

24   Valley region of Southern California.  Throughout the years, the

25   El Monte Flores gang has grown in size, and over 800 individuals

26   have either been identified as active El Monte Flores gang

27   members or associates since the date of the gang's inception.

28   The El Monte Flores gang has and continues to control the drug

1  distribution and other illegal activities within the cities of

2  El Monte and South El Monte.

3      3.   El Monte Flores gang members commit crimes, including

4  acts of violence (ranging from battery to murder), drug

5  trafficking offenses, robbery, burglary, carjacking, witness

6  intimidation, kidnapping, weapons trafficking, credit card

7  fraud, identity theft, and hate crimes directed against African-

8  Americans who might reside or be present in the cities of El

9  Monte and South El Monte in an effort to rid these cities of all

10  African-Americans.  The El Monte Flores gang maintains control

11  of its territory by attacking and threatening rival gang members

12  who enter the city of El Monte or surrounding areas;

13  intimidating and threatening residents of the cities of El Monte

14  and South El Monte; and using graffiti, gang signs, and gang

15  paraphernalia within the cities of El Monte and South El Monte

16  to indicate that the gang controls the affected areas.  Members

17  of the El Monte Flores gang possess and carry firearms in order

18  to maintain control of the gang's territory, as well as to

19  retaliate against rival gang members.  Members of the El Monte

20  Flores gang also steal vehicles, using generic and shaved

21  ignition keys, to commit violent crimes and to help conceal

22  their identities from law enforcement.

23      4.   As a further means of intimidating and controlling the

24  residents of the cities of El Monte and South El Monte and

25  enhancing their own reputations within the El Monte Flores gang,

26  and the overall reputation of the El Monte Flores gang itself,

27  El Monte Flores gang members: resist arrest by running from law

28  enforcement; intimidate, threaten, and assault persons in the

cities of El Monte and South El Monte (including potential witnesses who could testify in court about their crimes); rob, assault, and murder persons who show disrespect to the El Monte Flores gang or El Monte Flores gang members; and write graffiti on businesses and residences within the gang's territory.

5.   El Monte Flores gang members take pride in the crimes committed by other El Monte Flores gang members and believe that the commission of crimes enhances the status of the entire El Monte Flores gang in the eyes of other criminal street gangs and the Mexican Mafia, a powerful criminal organization that operates from within the California state and federal prison systems and exerts control both within and outside the prison system.   El Monte Flores gang members also believe that their commission of crimes, particularly crimes of violence (ranging from battery to murder), enhances their standing within the El Monte Flores gang itself and can lead to them attaining greater status within the gang.

6.   The El Monte Flores gang extorts money from drug traffickers who sell methamphetamine, heroin, and other drugs in the gang's territory in the cities of El Monte and South El Monte.   These drug traffickers are forced to pay a drug "tax" or "rent" to the El Monte Flores gang, a portion of which is passed on to the Mexican Mafia.   If a drug trafficker refuses to pay this drug "tax" to the El Monte Flores gang, that drug trafficker faces reprisals from the El Monte Flores gang, including fines, robbery, kidnapping, and threatened or actual violence.   On the other hand, if a drug trafficker does pay this drug "tax" to the El Monte Flores gang, that drug trafficker

1   will be given authorization from the El Monte Flores gang to

2   sell drugs in the cities of El Monte and South El Monte and will

3   receive protection from the El Monte Flores gang against both El

4   Monte Flores gang members and members of rival gangs.

5       7.    In addition to taxing drug traffickers who sell drugs

6   in the cities of El Monte and South El Monte, members of the El

7   Monte Flores gang sell and direct others to sell drugs,

8   including methamphetamine, heroin, cocaine, cocaine base in the

9   form of crack cocaine ("crack cocaine"), and other drugs, to

10  customers in the cities of El Monte and South El Monte.  Through

11  El Monte Flores gang members' personal sales of drugs and the El

12  Monte Flores gang's taxation of all other drug traffickers

13  selling drugs in the cities of El Monte and South El Monte, the

14  El Monte Flores gang controls the sale and distribution of drugs

15  in the cities of El Monte and South El Monte.

16      8.    "Crawford's Plaza," located at the corner of Valley

17  Boulevard and Garvey Avenue in El Monte, California, and the

18  "Klingerman" apartment complex, located on the 11100-11300 block

19  of Klingerman Street in El Monte, California, have long been

20  central locations for criminal activity by members of the El

21  Monte Flores gang.  Gang members regularly use threats and acts

22  of violence to extort "taxes" from drug dealers at "Crawford's

23  Plaza" and the "Klingerman" apartments, and from fraudulent

24  document vendors who operate at "Crawford's Plaza."  Members and

25  associates of the El Monte Flores gang also regularly sell drugs

26  in the area surrounding "Crawford's Plaza" and in the

27  "Klingerman" apartments.  "Tax collectors" use the collected

28  funds to promote and further the criminal activities of the El

1    Monte Flores gang in a number of ways, including by using the

2    funds to pay the required tribute to Mexican Mafia members and

3    to purchase drugs and firearms.  The El Monte Flores gang also

4    lays claim to the Boys & Girls Club of America – San Gabriel

5    Valley Club, located at 2740 Mountain View Road in El Monte, and

6    the gang's members openly sell drugs, collect extortionate

7    taxes, fight, and hold gang meetings at the Boys & Girls Club of

8    America.

9         9.    El Monte Flores gang members are typically required to

10   participate in a significant number of criminal acts on behalf

11   of the El Monte Flores gang.  This often is referred to as

12   "putting in work" for the El Monte Flores gang, which means

13   committing crimes such as drug trafficking, robbery, carjacking,

14   kidnapping, witness intimidation, credit card fraud, identity

15   theft, murder, and assaults of rival gang members, African-

16   Americans, and law enforcement in the cities of El Monte and

17   South El Monte.  New members not only earn "respect" within the

18   El Monte Flores gang for committing these crimes, but also help

19   ensure the El Monte Flores gang's control over its territory by

20   increasing the fear that the citizens within the cities of El

21   Monte and South El Monte have of the gang.  Once it has been

22   decided that a prospective El Monte Flores gang member will be

23   admitted into the gang, the prospective member will be "jumped

24   in" to the gang, which means he is subjected to a physical

25   beating by several existing members of the El Monte Flores gang.

26   The beating is expected to demonstrate both dedication to the

27   gang and physical strength.  Once a person becomes a member of

28   the El Monte Flores gang, that member will typically continue to

9

commit crimes to generate funds for the gang, build his own
reputation within the gang, and enhance the overall reputation
of the El Monte Flores gang itself.  Some individuals are
admitted to the El Monte Flores gang without having to "put in
work" or be "jumped in," based upon an older relative's position
within the gang or through their long-time association with
senior El Monte Flores gang members.

10.  The El Monte Flores gang includes not only members but
associates.  An associate is a person with an established
relationship to the El Monte Flores gang.  El Monte Flores gang
associates often act on behalf of, and for the benefit of, the
El Monte Flores gang by engaging in drug trafficking, the
collection of tax extortion proceeds, and money laundering for
members of the El Monte Flores gang and Mexican Mafia.  Both
members of the El Monte Flores gang and their associates are
participants in the El Monte Flores criminal enterprise.

11.  El Monte Flores gang members identify their territory
by spray-painting, or "tagging," on street signs, walls, and
buildings such things as "EL MONTE FLORES," "FLORES," and "EMF,"
as well as the monikers of El Monte Flores gang members.
Members generally engage in tagging not only to identify
territory claimed by the El Monte Flores gang, but also to warn
and/or terrorize members of the public and law-abiding residents
of the neighborhoods with threats that the neighborhood is under
the control of the El Monte Flores gang.

12.  El Monte Flores gang members generally wear clothing
that identifies them as members of the gang.  In particular, El
Monte Flores gang members wear black and blue items that display

versions of the "F" and "M" symbol commonly associated with the Florida Marlins and Milwaukee Brewers baseball teams.  El Monte Flores gang members also wear clothing and baseball caps with the "Famous Stars and Straps" logo, which is the upper case "F" with a star in the middle.  Other articles of clothing include metal belt buckles that display the letters "E," "M," or "F."  Some gang members also wear clothing that display "SGV" and "EL MONTE," representing the San Gabriel Valley and the city of El Monte.  Additionally, El Monte Flores gang members often tattoo the words "EL MONTE FLORES," "FLORES," and "EMF13" (the number "13" is associated with the Mexican Mafia) in prominent places on their bodies, including their face, neck, chest, back, and on the top or back of their heads.  El Monte Flores gang members display these tattoos to show their membership in, and loyalty to, the El Monte Flores gang.  Finally, El Monte Flores gang members use hand signs, typically by forming the letter "F" with their hands, to identify themselves to other gang members and to intimidate rivals and members of the public.

13.  The El Monte Flores gang is controlled principally by a senior member who is known as the "Keyholder" or "Shotcaller." The Keyholder is responsible for ensuring that the goals of the El Monte Flores gang are met.  These goals include generating revenue by managing the drug trafficking activities in the El Monte Flores gang's territory and extorting tax proceeds from drug dealers and fraudulent document vendors; and enforcing Mexican Mafia directives and the El Monte Flores gang's code of conduct.  Leadership and status in the gang sometimes change based on internal conflicts and power struggles.  Those seeking

1   leadership positions are said to be engaged in "politicing,"

2   which means that they are attempting to gain favor with other

3   gang members and members of the Mexican Mafia in order to attain

4   a position of authority and responsibility in the El Monte

5   Flores gang or Mexican Mafia.

6   B.   THE MEXICAN MAFIA'S AUTHORITY OVER AND RELATIONSHIP WITH

7        THE EL MONTE FLORES GANG

8        14.  As noted above, the El Monte Flores gang is loyal and

9   committed to the Mexican Mafia.  The sole purpose of the Mexican

10  Mafia is to control and organize the criminal activities of

11  Southern California Hispanic street gangs (referred to as

12  "Sureno" gangs).  Each Sureno gang in Southern California is

13  controlled by one or more Mexican Mafia members.  Typically,

14  Mexican Mafia members are incarcerated within a state or federal

15  correctional institution.  Even though the Mexican Mafia member

16  is incarcerated, his custodial status does not inhibit the

17  influence he wields over a particular territory or prevent him

18  from continuing to operate a criminal enterprise.

19       15.  The Mexican Mafia, often referred to as "La Eme"

20  (derived from the Spanish pronunciation of the letter "M"), is a

21  criminal organization that operates from within the California

22  state prison system, the federal prison system, the streets and

23  suburbs of large cities throughout Southern California, and

24  elsewhere.  Each member of the Mexican Mafia, commonly referred

25  to as a "Carnal," "Brother," "Big Homie," "Tio" (Spanish for

26  "uncle"), and/or "Padrino" (Spanish for "godfather"), comes from

27  the ranks of local Southern California Hispanic street gangs,

28  including the El Monte Flores gang.  By controlling the criminal

1   activities occurring within prison facilities, providing

2   protection for imprisoned members and associates of Hispanic

3   gangs, and imposing discipline, often in the form of acts of

4   violence, against both individuals and street gangs who fail to

5   adhere to its directives, the Mexican Mafia has risen to the

6   position where it now exercises control outside the prison

7   system over the Hispanic street gangs of Southern California,

8   including the El Monte Flores gang.  The Mexican Mafia charges

9   the street gangs under its control sums of money to be paid on a

10  regular basis, known as "taxes," "rent," "tribute," or "feria"

11  (Spanish for money), which is payable to the Mexican Mafia

12  member staking claim to, and designated to oversee, the

13  particular street gang.  The Mexican Mafia members appoint

14  associates to facilitate the collection of the rent proceeds

15  from street gangs.  In return for such payments, a street gang

16  receives the Mexican Mafia's authorization to control the

17  criminal activities occurring within the gang's territory, free

18  from interference or competition from other street gangs, as

19  well as protection for the gang's members who are incarcerated.

20  Failure to pay either the "rent," or to adhere to the Mexican

21  Mafia's directives, will result in the street gang being

22  penalized by the Mexican Mafia, which can include violence

23  directed at either individual members of the street gang or the

24  street gang as a whole.

25      16.  In recent years, through approximately 2007, the El

26  Monte Flores gang operated under the authority and direction of

27  Mexican Mafia member F.B.  Mexican Mafia member F.B. had control

28  over the San Gabriel Valley with the assistance of

1  intermediaries, who helped facilitate his receipt of "rent"

2  payments from the El Monte Flores gang, and communicated or

3  assisted in the communication of Mexican Mafia member F.B.'s

4  directives to the El Monte Flores gang.  Mexican Mafia member

5  F.B. died in 2007, and, since that date, members from the El

6  Monte Flores gang have paid "rent" to several Mexican Mafia

7  members vying for control of the El Monte Flores gang, including

8  Mexican Mafia member R.S., Mexican Mafia member C.A., and

9  Mexican Mafia member and defendant JAMES GUTIERREZ, also known

10  as ("aka") "Chemo."

11  C.   PURPOSES OF THE ENTERPRISE

12     17.   The purposes of the El Monte Flores gang include, but

13  are not limited to, the following:

14          a.   Enriching members and associates of the El Monte

15  Flores gang and the Mexican Mafia through, among other things,

16  the control of, and participation in, the distribution of

17  various controlled substances in the El Monte Flores gang's

18  territory; the collection of "taxes" from drug traffickers and

19  fraudulent document vendors who operate in the El Monte Flores

20  gang's territory; and the commission of financially-oriented

21  crimes such as identity theft and robbery.

22          b.   Maintaining control and authority over the El

23  Monte Flores gang's territory, often through threats,

24  intimidation, and the commission of acts of violence against

25  local residents and rival gangs.

26          c.   Preserving, protecting, and expanding the power

27  of the El Monte Flores gang through the use of intimidation,

28

violence, threats of violence, assaults, racially-motivated attacks, and murders.

     d.    Promoting and enhancing the reputations and activities of the El Monte Flores gang and its members and associates.

D.   THE MEANS AND METHODS OF THE ENTERPRISE

    18.   The means and methods by which the defendants and other members and associates of the El Monte Flores gang conduct and participate in the conduct of the affairs of the El Monte Flores gang include:

     a.    Members and associates of the El Monte Flores gang commit, attempt to commit, and threaten to commit, acts of violence, including murders, assaults, acts of intimidation, threats of violence directed against rival gang members and witnesses in criminal cases, and racially-motivated attacks, in order to protect and expand the scope of the enterprise's criminal operations and to promote a climate of fear.

     b.    Members and associates of the El Monte Flores gang engage in drug trafficking, firearms trafficking, robbery, identity theft, credit card fraud, and extortionate "tax" collection as a means to generate income for the gang.

     c.    The El Monte Flores gang pays "taxes" or "tribute" to the Mexican Mafia in order to ensure protection for its incarcerated members and associates, and in order to obtain continued authorization to exercise exclusive control over the El Monte Flores gang's territory and the criminal conduct occurring therein.

1          d.    Members and associates of the El Monte Flores

2   gang attempt to conceal from law enforcement the identity of its

3   members and associates, the ways in which the gang conducts its

4   affairs, and the locations where the gang's members and

5   associates discuss and conduct the gang's affairs.

COUNT ONE

[18 U.S.C. § 1962(d)]

1.   Paragraphs One through Eighteen of the General
Allegations of this Indictment are re-alleged and incorporated
by reference as though fully set forth herein.

A.   OBJECT OF THE RICO CONSPIRACY

2.   Beginning on a date unknown to the Grand Jury, and
continuing to on or about the date of this Indictment, in Los
Angeles County, within the Central District of California, and
elsewhere, defendants JAMES GUTIERREZ, aka "Chemo"
("J. GUTIERREZ"), RICHARD MICHAEL SANCHEZ, aka "Pitbull"
("R. SANCHEZ"), ROBERT RODRIGUEZ, aka "Mosca" ("ROBERT
RODRIGUEZ"), KENNETH COFER, aka "Shady" ("COFER"), LOUIS ARMANDO
RUIZ, aka "Tall Luis," aka "Mike Lopez" ("RUIZ"), JOHN RIVERA,
JR., aka "Beetle" ("RIVERA"), MARCO GARCIA, aka "Sleepy"
("M. GARCIA"), LENORE JARA ("JARA"), MARIE GUTIERREZ
("M. GUTIERREZ"), JOHNNY MATA, aka "Minor" ("MATA"), JOSE SALAS,
aka "Violent," aka "Eddie Boy" ("SALAS"), CHRISTIAN LAFARGO, aka
"Bossy" ("LAFARGO"), RICHARD BALLESTEROS, aka "Smiley"
("BALLESTEROS"), RAYMOND LOPEZ, aka "Loco Ray" ("R. LOPEZ"),
JOSE LUIS GARCIA, aka "Lil Azteca" ("J. GARCIA"), ARNOLD
MACHADO, aka "Chunks" ("MACHADO"), WILLIAM MCCORMICK, aka
"Munchie" ("MCCORMICK"), RAFAEL LOMELI, aka "Pelon" ("LOMELI"),
RUBEN TRINIDAD, aka "Turk," aka "E-Loc" ("TRINIDAD"), MICHELLE
VICTORIA CORTEZ, aka "Dimples" ("M. CORTEZ"), BERNADETTE CORTEZ,
aka "Smiley" ("B. CORTEZ"), ENRIQUE LOPEZ, aka "Kiki," aka
"Ricky" ("E. LOPEZ"), MARK JURADO, aka "Marco" ("JURADO"),
VINCENT CARLOS VALENCIA, aka "Solo" ("VALENCIA"), GUSTAVO MUNOZ,

17

1  aka "Topo" ("MUNOZ"), ANTHONY GOMEZ, aka "Kirby," aka "Chente"

2  ("GOMEZ"), ALFRED BESERRA, aka "Enemy" ("BESERRA"), RICHARD

3  CASTRO RODRIGUEZ, aka "Turtle," aka "Richy Boy" ("RICHARD

4  RODRIGUEZ"), SERGIO CORDERO, aka "Bam Bam" ("CORDERO"), DANNY

5  CADENA, aka "Serio" ("CADENA"), ANGEL HERNANDEZ, aka "Gangster"

6  ("A. HERNANDEZ"), RICHARD ANTHONY PONCE, aka "Ricky Boy"

7  ("PONCE"), KARL EUGENE BOWERS, aka "Chino" ("BOWERS"), MARK

8  JEREMY SALAZAR, aka "Huero" ("SALAZAR"), MICHAEL SIERRA, aka

9  "Mellow" ("SIERRA"), ANGELICA CASTELLANO ("CASTELLANO"), and

10  HIRAM RAMIREZ, aka "Tijuas" ("RAMIREZ"), and others known and

11  unknown to the Grand Jury, being persons employed by and

12  associated with the El Monte Flores gang, which constitutes an

13  "enterprise" as defined in Title 18, United States Code, Section

14  1961(4), which enterprise engaged in, and the activities of

15  which affected, interstate and foreign commerce, unlawfully and

16  knowingly combined, conspired, confederated, and agreed together

17  and with each other to violate Title 18, United States Code,

18  Section 1962(c), that is, to conduct and participate, directly

19  and indirectly, in the conduct of the affairs of the enterprise

20  through a pattern of racketeering activity, as that term is

21  defined in Title 18, United States Code, Sections 1961(1) and

22  1961(5), consisting of multiple acts involving murder, in

23  violation of California Penal Code Sections 21a, 31, 182, 187,

24  189, and 664; extortion, in violation of California Penal Code

25  Sections 21a, 31, 182, 518, 519, 520, and 664; robbery, in

26  violation of California Penal Code Sections 21a, 31, 182, 211,

27  212.5(a), 213, and 664; kidnapping, in violation of California

28  Penal Code Sections 21a, 31, 182, 209, and 664; multiple

18

offenses involving trafficking in controlled substances, including methamphetamine, heroin, and cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and multiple acts indictable under Title 18, United States Code, Sections 1028 (Identity Theft) and 1029 (Access Device Fraud); and Title 18, United States Code, Sections 1512 (Tampering with a Witness, Victim, or an Informant) and 1513 (Retaliating against a Victim, Witness, or an Informant).  It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
     ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1.   Mexican Mafia members, including defendant J. GUTIERREZ, would pass messages from within the California State and Federal prison systems to defendants R. SANCHEZ, ROBERT RODRIGUEZ, JARA, and M. GUTIERREZ, and others known and unknown to the Grand Jury, instructing El Monte Flores gang leaders to direct certain activities of the El Monte Flores gang, including activities involving the distribution of controlled substances and the collection and distribution of "taxes" collected from those engaged in illegal activities, and to authorize and direct acts of violence committed by members and associates of the El Monte Flores gang.

2.     Mexican Mafia members and associates, including defendant J. GUTIERREZ and Mexican Mafia members R.S. and C.A., and others known and unknown to the Grand Jury, from within the California State and Federal prison system, would grant leadership authority over the El Monte Flores gang to defendants COFER, RUIZ, and M. GARCIA, and others known and unknown to the Grand Jury.

3.     Defendant J. GUTIERREZ, Mexican Mafia members R.S. and C.A., and others known and unknown to the Grand Jury, would authorize El Monte Flores gang members and associates to extort and collect "taxes" from drug traffickers, fraudulent document vendors, and others in the areas controlled by the El Monte Flores gang.

4.     Defendants COFER, RUIZ, and M. GARCIA, and others known and unknown to the Grand Jury, would direct other El Monte Flores gang members to commit crimes, including robberies, murders, extortion, witness intimidation, and drug trafficking, in order to promote and further the activities of the El Monte Flores gang.

5.     Defendants COFER, RIVERA, M. GARCIA, MATA, SALAS, LAFARGO, BALLESTEROS, R. LOPEZ, J. GARCIA, MACHADO, TRINIDAD, B. CORTEZ, VALENCIA, MUNOZ, BESERRA, RICHARD RODRIGUEZ, CORDERO, CADENA, A. HERNANDEZ, PONCE, BOWERS, SALAZAR, and SIERRA, and others known and unknown to the Grand Jury, would obtain and possess firearms and ammunition for El Monte Flores gang members, so they could be used to enforce the authority of the El Monte Flores gang.

1       6.   Defendants COFER, RUIZ, and M. GARCIA, and others

2   known and unknown to the Grand Jury, would provide controlled

3   substances to El Monte Flores gang members and associates for

4   further distribution.

5       7.   Defendants R. SANCHEZ, ROBERT RODRIGUEZ, COFER, RUIZ,

6   RIVERA, M. GARCIA, JARA, M. GUTIERREZ, SALAS, LAFARGO,

7   BALLESTEROS, R. LOPEZ, J. GARCIA, MACHADO, MCCORMICK, LOMELI,

8   TRINIDAD, M. CORTEZ, B. CORTEZ, E. LOPEZ, JURADO, VALENCIA,

9   MUNOZ, GOMEZ, BESERRA, RICHARD RODRIGUEZ, CORDERO, CADENA, A.

10  HERNANDEZ, PONCE, BOWERS, SALAZAR, SIERRA, and CASTELLANO, and

11  others known and unknown to the Grand Jury, would possess and

12  distribute controlled substances in the neighborhoods controlled

13  by the El Monte Flores gang.

14      8.   Defendants R. SANCHEZ, ROBERT RODRIGUEZ, COFER, RUIZ,

15  RIVERA, M. GARCIA, JARA, M. GUTIERREZ, MACHADO, M. CORTEZ, E.

16  LOPEZ, JURADO, VALENCIA, CASTELLANO, and RAMIREZ, and others

17  known and unknown to the Grand Jury, would collect extortionate

18  "tax" payments from drug traffickers, fraudulent document

19  vendors, and others in the neighborhoods controlled by the El

20  Monte Flores gang.

21      9.   Defendants R. SANCHEZ, ROBERT RODRIGUEZ, COFER, RUIZ,

22  JARA, M. GUTIERREZ, E. LOPEZ, JURADO, and CASTELLANO, and others

23  known and unknown to the Grand Jury, would deliver payment of

24  the collected extortionate "taxes" to Mexican Mafia members R.S.

25  and C.A. and defendant J. GUTIERREZ as tribute owed by the El

26  Monte Flores gang to the Mexican Mafia and to obtain the

27  protection, favor, and backing of the Mexican Mafia.

28

10.   Defendants R. SANCHEZ, COFER, MATA, SALAS, LAFARGO, BALLESTEROS, J. GARCIA, MACHADO, TRINIDAD, M. CORTEZ, B. CORTEZ, VALENCIA, MUNOZ, CADENA, A. HERNANDEZ, and SIERRA, and others known and unknown to the Grand Jury, would use firearms and dangerous weapons to commit robberies, kidnappings, and assaults, and to retaliate against, attempt to kill, and kill gang members who obstructed the purposes of the El Monte Flores enterprise, law enforcement officers, potential witnesses to criminal activities committed by El Monte Flores gang members, and residents in the neighborhoods controlled by the El Monte Flores gang, in order to enforce the authority of the El Monte Flores gang.

C.   OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, defendants J. GUTIERREZ, R. SANCHEZ, ROBERT RODRIGUEZ, COFER, RUIZ, RIVERA, M. GARCIA, JARA, M. GUTIERREZ, MATA, SALAS, LAFARGO, BALLESTEROS, R. LOPEZ, J. GARCIA, MACHADO, MCCORMICK, LOMELI, TRINIDAD, M. CORTEZ, B. CORTEZ, E. LOPEZ, JURADO, VALENCIA, MUNOZ, GOMEZ, BESERRA, RICHARD RODRIGUEZ, CORDERO, CADENA, A. HERNANDEZ, PONCE, BOWERS, SALAZAR, SIERRA, CASTELLANO, and RAMIREZ, and others known and unknown to the Grand Jury, committed various overt acts, on or about the following dates, within the Central District of California, and elsewhere, including, but not limited to, the following:

1.   On January 4, 1995, Mexican Mafia member R.S. told unindicted Mexican Mafia members that Mexican Mafia member R.S. wanted a silencer to kill Mexican Mafia dropout A.M. because

there were children present at A.M.'s residence and Mexican Mafia member R.S. did not want to kill the children.

2.   On April 2, 1995, Mexican Mafia member R.S. sponsored El Monte Flores gang member L.M. for membership into the Mexican Mafia, and although other Mexican Mafia members objected to L.M.'s membership because they did not know L.M. and the Mexican Mafia had decided not to accept new members, Mexican Mafia member R.S. eventually convinced the other Mexican Mafia members to vote in favor of L.M. because L.M. had killed people on behalf of the Mexican Mafia.

3.   On April 22, 1995, unindicted co-conspirators, hired by El Monte Flores gang member L.M., executed Mexican Mafia dropout A.M. and victims G.A., M.M., L.M., and A.P. inside a residence on Maxon Street in El Monte, California (the "Maxon Murders").

4.   On January 7, 1998, defendant MUNOZ and an unindicted co-conspirator possessed approximately 6.42 grams of crack cocaine and .57 grams of methamphetamine, as well as $121 in U.S. currency, in El Monte Flores gang territory.

5.   On July 26, 2000, defendants MUNOZ and VALENCIA and an unindicted co-conspirator possessed a loaded .380 caliber firearm and gang paraphernalia in their car in El Monte Flores gang territory.

6.   On February 23, 2001, defendant CADENA and an unindicted co-conspirator approached an African-American male at a party held in El Monte Flores gang territory, said "get the f**k out of here n****r," and attacked the African-American male and chased him on foot as they yelled "El Monte Flores."

7.   On June 20, 2002, defendant J. GARCIA entered victim J.M.'s taxi in El Monte Flores gang territory, urinated in the taxi, demanded J.M.'s wallet, placed a shoestring around J.M.'s neck and attempted to strangle J.M., punched J.M. in the head after J.M. refused to give defendant J. GARCIA the wallet, and threatened to kill J.M. when defendant J. GARCIA saw a police officer approach the taxi.

8.   On September 26, 2002, defendant M. CORTEZ possessed handwritten notes of a recipe for manufacturing methamphetamine in her residence, located in El Monte Flores gang territory.

9.   On January 21, 2003, defendant BALLESTEROS and an unindicted co-conspirator pulled their car next to victim I.T.'s car in El Monte Flores gang territory; defendant BALLESTEROS asked I.T. "where are you from" and told I.T. that "this is Monte Flores"; and the unindicted co-conspirator fired two shots at I.T. and his car.

10.   On April 19, 2003, defendants J. GARCIA and LOMELI led law enforcement officers on a high-speed car chase through El Monte Flores gang territory while defendant J. GARCIA possessed ammunition for a .25 caliber firearm.

11.   On October 25, 2003, defendant BOWERS possessed approximately .24 grams of methamphetamine and a .38 caliber firearm while in a residence with other El Monte Flores gang members.

12.   On January 9, 2004, defendant SALAS possessed approximately .46 grams of methamphetamine at his residence, located in El Monte Flores gang territory.

13.  On March 15, 2004, defendant B. CORTEZ threatened to harm victim G.V. because G.V. cooperated with law enforcement against an El Monte Flores gang member, demanded that G.V. give defendant B. CORTEZ $1,000 to bail the El Monte Flores gang member out of jail, and advised G.V. that the El Monte Flores gang member would kill G.V. if G.V. did not provide the money to defendant B. CORTEZ.

14.  On April 24, 2004, defendant MACHADO and an unindicted El Monte Flores gang member led law enforcement officers on a high-speed car chase through El Monte Flores gang territory, during which defendant MACHADO displayed hand gestures meant to identify himself as a member of the El Monte Flores gang and threw beer bottles from his vehicle at the patrol cars.

15.  On March 9, 2005, defendant GOMEZ possessed five shaved keys while driving a stolen Honda Accord, and also possessed Department of Motor Vehicle paperwork belonging to other vehicles not registered to defendant GOMEZ.

16.  On May 19, 2005, defendant JURADO possessed approximately 11.26 grams of heroin in his vehicle in El Monte Flores gang territory that he intended to sell.

17.  On August 23, 2005, defendant VALENCIA fled from law enforcement officers while he possessed a loaded .380 caliber semi-automatic pistol and a letter written by defendant VALENCIA pledging his allegiance to the El Monte Flores gang and to committing violence in El Monte Flores gang territory.

18.  On October 28, 2005, defendant SALAS possessed approximately one and one-half pounds of methamphetamine, a

digital scale, and plastic baggies at his residence, located in El Monte Flores gang territory.

19.  On January 4, 2006, defendant J. GARCIA possessed 5.48 grams of methamphetamine in his residence, in the neighborhood controlled by the El Monte Flores gang.

20.  On March 5, 2006, defendant R. LOPEZ possessed 19 balloons of heroin in his vehicle in El Monte Flores gang territory.

21.  On April 12, 2006, defendant RICHARD RODRIGUEZ possessed two shaved car keys and approximately .44 grams of methamphetamine while leading law enforcement officers on a high-speed car chase in a stolen vehicle through El Monte Flores gang territory.

22.  On June 15, 2006, defendant SALAS and unidentified co-conspirators kidnapped victim C.V. over a drug debt and held C.V. hostage at a residence, located in El Monte Flores gang territory.

23.  On August 18, 2006, defendant RIVERA possessed brass knuckles while in El Monte Flores gang territory.

24.  On October 10, 2006, defendant TRINIDAD told victim B.B. that defendant TRINIDAD was a "N****r killer," that B.B. did not belong in El Monte, and that defendant TRINIDAD and other El Monte Flores gang members would attack B.B.  Later that same day, El Monte Flores gang members attacked and beat B.B. in El Monte Flores gang territory.

25.  On October 11, 2006, defendant B. CORTEZ possessed approximately 22.64 grams of methamphetamine and .69 grams of crack cocaine, a loaded .38 caliber firearm, a loaded .40

caliber firearm, a loaded 9mm firearm, 20 rounds of .357 caliber
ammunition, 22 rounds of .40 caliber ammunition, 17 rounds of
.22 caliber ammunition, one round of .223 caliber ammunition, a
digital scale, and $1,383 in U.S. currency in her residence,
located in El Monte Flores gang territory.

26. On March 3, 2007, defendant TRINIDAD asked victim J.B.
where he was from, brandished a knife, and attempted to steal
J.B.'s car in El Monte Flores gang territory.

27. On May 15, 2007, defendant VALENCIA and an El Monte
Flores gang prospect were stopped for a traffic violation in
rival gang territory; and as the El Monte Flores gang prospect
fled the car while pursued by law enforcement officers, he
attempted to dispose of two loaded firearms.

28. On October 18, 2007, defendant GOMEZ drove a stolen
BMW and led law enforcement officers on a high-speed car chase
through Pasadena, California.

29. On February 17, 2008, co-conspirator Salvador
Hernandez, aka "Tiburon" ("S. Hernandez"), possessed
approximately 2.4 grams of methamphetamine and $313 in U.S.
currency in his vehicle in El Monte Flores gang territory.

30. On May 18, 2008, an unindicted co-conspirator wrote a
letter to defendant MATA, who was incarcerated at the time,
advising defendant MATA that another unindicted co-conspirator
had a new firearm for defendant MATA when defendant MATA
returned to El Monte Flores gang territory.

31. On July 5, 2008, defendant LAFARGO and an unindicted
El Monte Flores gang member possessed a can of spray-paint in
their car in El Monte Flores gang territory.

32. On July 5, 2008, in El Monte Flores gang territory, defendant MUNOZ struck victim F.F. in the head with a firearm and the firearm discharged.

33. On August 5, 2008, defendant MACHADO possessed a generic Honda ignition key and a handcuff key while driving a stolen Honda Civic in El Monte Flores gang territory.

34. On October 28, 2008, defendant RIVERA and two unindicted El Monte Flores gang members possessed more than 9.66 grams of methamphetamine while selling methamphetamine from their car.

35. On November 8, 2008, defendant TRINIDAD possessed a loaded .40 caliber firearm in his waistband while he and another El Monte Flores gang member drank alcohol in defendant TRINIDAD's vehicle, all while in El Monte Flores gang territory.

36. On November 21, 2008, defendant LOMELI possessed $9,330 in U.S. currency, a police scanner, and a cutting agent used to manufacture methamphetamine.

37. On November 23, 2008, El Monte Flores gang members held a car wash at the Boys & Girls Club of America in El Monte Flores gang territory (the "Boys & Girls Club of America") to raise money for the family of a murdered El Monte Flores gang member.

38. On April 5, 2009, defendant TRINIDAD attacked, beat, and robbed victim L.M., a security guard, after L.M. attempted to break up a fight involving El Monte Flores gang members at Universal City Walk.

39. On April 11, 2009, in a telephone conversation using coded language, defendant VALENCIA told defendant J. GUTIERREZ

1    that members from the Artesia street gang had approached

2    defendant VALENCIA and other El Monte Flores gang members and

3    demanded that the El Monte Flores gang pay taxes to Mexican

4    Mafia member D.B.   During the same conversation, defendant J.

5    GUTIERREZ agreed to share the tax proceeds collected in El Monte

6    Flores gang territory with Mexican Mafia member R.G. because the

7    representatives for Mexican Mafia members R.S. and C.A. were

8    "weak," and defendant VALENCIA further agreed to send $200 to

9    defendant J. GUTIERREZ.

10         40.  On April 14, 2009, an unidentified co-conspirator sent

11   $200 in tax proceeds to defendant J. GUTIERREZ via Western

12   Union.

13         41.  On May 13, 2009, defendant RICHARD RODRIGUEZ possessed

14   approximately 100 plastic baggies, and led law enforcement

15   officers on a high-speed car chase while flashing gang signs out

16   of the car window.

17         42.  On May 27, 2009, defendant VALENCIA possessed

18   approximately .45 grams of methamphetamine and .2 grams of

19   heroin, a loaded .45 caliber Ruger firearm, and gang

20   paraphernalia in El Monte Flores gang territory.

21         43.  On July 14, 2009, defendant M. CORTEZ wrote a letter

22   to Mexican Mafia member R.S. requesting authority to collect

23   taxes in El Monte Flores gang territory and telling Mexican

24   Mafia member R.S. that defendant M. CORTEZ had multiple

25   unidentified co-conspirators who were ready to pay taxes to

26   Mexican Mafia member R.S.

27         44.  On July 25, 2009, defendant A. HERNANDEZ and an

28   unidentified co-conspirator robbed a "7-Eleven" convenience

store in El Monte Flores gang territory, and they threatened to kill the clerk if the clerk called the police.

45. On August 2, 2009, defendant LAFARGO, while possessing a 9mm firearm and marijuana packaged for distribution, beat and kicked victim J.D. in the head in El Monte Flores gang territory.

46. On August 27, 2009, defendant M. CORTEZ wrote a letter to Mexican Mafia member R.S. requesting permission for defendant VALENCIA to sell drugs in El Monte Flores gang territory.

47. On September 4, 2009, in a telephone conversation using coded language, an unindicted co-conspirator told defendant J. GUTIERREZ that defendant VALENCIA was concerned for his safety because defendant VALENCIA had kept extortionate taxes intended for defendant J. GUTIERREZ for himself.

48. On September 15, 2009, Mexican Mafia member R.S. wrote a letter to defendant M. CORTEZ authorizing defendant M. CORTEZ to collect taxes in El Monte Flores gang territory.

49. On September 17, 2009, in a telephone conversation using coded language, defendant RUIZ told defendant J. GUTIERREZ that Mexican Mafia member R.G. was opposing defendant J. GUTIERREZ's efforts to collect extortionate taxes in El Monte Flores gang territory, and that defendant RUIZ threatened rival gang members who were working on behalf of Mexican Mafia member R.G.

50. On October 14, 2009, defendant JURADO sent defendant J. GUTIERREZ $75 in extortionate taxes collected by the El Monte Flores gang.

51.  On October 15, 2009, defendants J. GARCIA and LOMELI, while armed with a firearm, entered a convenience store in El Monte Flores gang territory and accidentally shot victim E.R.

52.  On October 20, 2009, defendant GOMEZ possessed a knife and stolen credit cards in the name of victim S.D.

53.  On November 18, 2009, in a telephone conversation using coded language, defendant ROBERT RODRIGUEZ told Mexican Mafia member R.S. that defendant ROBERT RODRIGUEZ told defendant M. CORTEZ that defendant M. CORTEZ had to share the tax proceeds collected in El Monte Flores gang territory with Mexican Mafia member R.S., and defendant ROBERT RODRIGUEZ agreed to contact Mexican Mafia member R.G. to resolve a dispute between Mexican Mafia member R.S. and Mexican Mafia member R.G. over the control of El Monte Flores gang territory.

54.  On November 22, 2009, in a telephone conversation using coded language, defendant M. GUTIERREZ told defendant J. GUTIERREZ that defendant M. CORTEZ told El Monte Flores gang members that defendant M. CORTEZ represented defendant J. GUTIERREZ in El Monte Flores gang territory and that defendant J. GUTIERREZ provided defendant M. CORTEZ with the names and locations of people to tax in El Monte Flores gang territory; and defendant J. GUTIERREZ told defendant M. GUTIERREZ that defendant J. GUTIERREZ did not authorize defendant M. CORTEZ to collect tax proceeds in El Monte Flores gang territory.

55.  On November 23, 2009, defendant SIERRA approached victim E.P. in El Monte Flores gang territory; and defendant SIERRA asked E.P. "where you from," as he removed a bat from his sweatshirt and attacked E.P. with the bat.

31

56. On November 24, 2009, in a telephone conversation using coded language, defendant M. GUTIERREZ told defendant J. GUTIERREZ that defendants ROBERT RODRIGUEZ and M. GUTIERREZ confronted defendant M. CORTEZ, and defendant M. GUTIERREZ told defendant J. GUTIERREZ that defendant M. CORTEZ should be attacked.

57. On December 8, 2009, defendant RIVERA possessed a wooden billy club and approximately .44 grams of methamphetamine hidden in a black magnetic key holder on the kitchen counter in his residence, which was located in El Monte Flores gang territory.

58. On December 8, 2009, in a telephone conversation using coded language, defendant ROBERT RODRIGUEZ told Mexican Mafia member R.S. that defendant ROBERT RODRIGUEZ would work with defendant M. CORTEZ distributing drugs and collecting taxes in El Monte Flores gang territory on behalf of Mexican Mafia member R.S.

59. On December 21, 2009, in a telephone conversation using coded language, defendant M. GUTIERREZ told defendant J. GUTIERREZ that defendants RUIZ and M. CORTEZ were taxing drug dealers in El Monte Flores gang territory and that defendant M. CORTEZ was using defendant J. GUTIERREZ's name for authorization to collect the taxes.

60. On December 21, 2009, in a telephone conversation using coded language, defendant J. GUTIERREZ told defendant RUIZ that defendant M. CORTEZ was taxing drug dealers in El Monte Flores gang territory without defendant J. GUTIERREZ's

1  authorization, and defendant RUIZ agreed to find out if anyone

2  had paid these extortionate taxes to defendant M. CORTEZ.

3      61.  On January 5, 2010, defendant M. CORTEZ wrote a letter

4  to Mexican Mafia Member R.S. telling Mexican Mafia Member R.S.

5  that defendant M. CORTEZ was attempting to collect taxes in El

6  Monte Flores gang territory on behalf of Mexican Mafia R.S. but

7  that unidentified co-conspirators had refused to accept

8  defendant M. CORTEZ's authority to collect these taxes.

9      62.  On January 5, 2010, defendant CASTELLANO possessed

10 approximately 4.0 grams of methamphetamine, 230 pseudoephedrine

11 pills, and 10 hydrocodone pills in a vehicle in Arcadia,

12 California.

13     63.  On January 10, 2010, in a telephone conversation using

14 coded language, defendant ROBERT RODRIGUEZ told Mexican Mafia

15 member R.S. that Mexican Mafia member R.G. would provide an

16 unidentified co-conspirator to assist defendant ROBERT RODRIGUEZ

17 with collecting taxes in El Monte Flores gang territory.

18     64.  On January 17, 2010, in a telephone conversation using

19 coded language, defendant RUIZ told defendant J. GUTIERREZ that

20 he would send extortionate tax payments collected by the El

21 Monte Flores gang to defendant J. GUTIERREZ the following week,

22 and defendant J. GUTIERREZ asked defendant RUIZ to collect and

23 send additional money from an unidentified co-conspirator.

24     65.  On January 22, 2010, in a telephone conversation using

25 coded language, defendant RUIZ told defendant J. GUTIERREZ that

26 defendant RUIZ spoke to defendant M. CORTEZ but defendant M.

27 CORTEZ was defiant, and defendant J. GUTIERREZ gave defendant

28

1  RUIZ permission to attack an unidentified drug distributor who

2  paid taxes to defendant M. CORTEZ.

3      66.  On January 24, 2010, in a telephone conversation using

4  coded language, defendant BALLESTEROS told defendant J.

5  GUTIERREZ that defendants RUIZ and BALLESTEROS were present at

6  an El Monte Flores gang meeting with 18 additional El Monte

7  Flores gang members to discuss a problem with rival gang members

8  under the authority of Mexican Mafia members R.G. and R.R. who

9  were selling drugs in El Monte Flores gang territory.

10     67.  On January 24, 2010, in a telephone conversation using

11  coded language, defendant RUIZ told defendant J. GUTIERREZ that

12  rival gang members under the authority of Mexican Mafia members

13  R.G. and R.R. were selling drugs in El Monte Flores gang

14  territory that the rival gang members attacked an unidentified

15  El Monte Flores gang member; and defendant J. GUTIERREZ provided

16  authorization to defendant RUIZ to attack the rival gang

17  members.

18     68.  On January 25, 2010, in a telephone conversation using

19  coded language, defendant RUIZ told defendant J. GUTIERREZ that

20  defendant RUIZ was going to Western Union to send extortionate

21  taxes collected by the El Monte Flores gang to defendant J.

22  GUTIERREZ; and defendant J. GUTIERREZ told defendant RUIZ not to

23  discuss business over the telephone because defendant J.

24  GUTIERREZ had been recently questioned by prison investigators

25  about defendant J. GUTIERREZ's authorization of an assault on

26  representatives of Mexican Mafia members R.G. and R.R.

27

28

69. On January 25, 2010, defendant RUIZ caused $100 in taxes collected by the El Monte Flores gang to be sent to defendant J. GUTIERREZ.

70. On February 10, 2010, in a telephone conversation using coded language, defendant J. GUTIERREZ told defendant JURADO that defendant RUIZ sent $100 in taxes to defendant J. GUTIERREZ the previous week, and defendants E. LOPEZ and JURADO agreed to send additional money to defendant J. GUTIERREZ at a later date.

71. On February 20, 2010, in a telephone conversation using coded language, defendant JURADO told defendant J. GUTIERREZ that defendant JURADO was collecting extortionate taxes from defendant E. LOPEZ and other unidentified co-conspirators.

72. On February 24, 2010, in a telephone conversation using coded language, defendant J. GUTIERREZ told defendant JURADO that El Monte Flores gang members had resisted paying extortionate taxes to defendant J. GUTIERREZ, but that the El Monte Flores gang members would not resist paying these taxes after defendant J. GUTIERREZ is released from custody and back in El Monte Flores gang territory.

73. On February 24, 2010, in a telephone conversation using coded language, defendant JURADO told defendant J. GUTIERREZ that defendant JURADO was going to collect extortionate taxes on behalf of defendant J. GUTIERREZ later that day, and defendant J. GUTIERREZ told defendant JURADO to admonish defendant E. LOPEZ for not paying taxes and to tell

1  defendant E. LOPEZ to provide heroin to defendant JURADO for

2  free.

3      74.  On February 25, 2010, in a telephone conversation

4  using coded language, defendant J. GUTIERREZ told defendant

5  JURADO that defendant J. GUTIERREZ received tax proceeds from

6  defendant E. LOPEZ and an unindicted co-conspirator.

7      75.  On March 15, 2010, in a telephone conversation using

8  coded language, defendant J. GUTIERREZ told defendant JURADO to

9  contact defendant RUIZ and tell defendant RUIZ that defendant J.

10  GUTIERREZ wanted defendant RUIZ to pay extortionate taxes to

11  defendant J. GUTIERREZ.

12      76.  On April 2, 2010, in a telephone conversation using

13  coded language, defendant JURADO told defendant J. GUTIERREZ

14  that defendants E. LOPEZ and JURADO were going to collect taxes

15  in El Monte Flores gang territory later that day, and defendant

16  J. GUTIERREZ complained that defendant RUIZ had not paid taxes

17  recently.

18      77.  On April 2, 2010, in a telephone conversation using

19  coded language, defendant E. LOPEZ told defendant J. GUTIERREZ

20  that defendant E. LOPEZ was selling heroin and that defendants

21  E. LOPEZ and JURADO were on their way to Western Union to send

22  defendant J. GUTIERREZ tax money; and defendant J. GUTIERREZ

23  told defendant E. LOPEZ to tell El Monte Flores gang members not

24  to be afraid of Mexican Mafia members R.G. and R.R. even though

25  Mexican Mafia members R.G. and R.R. were collecting taxes in El

26  Monte Flores gang territory.

27      78.  On April 4, 2010, in a telephone conversation using

28  coded language, defendant J. GUTIERREZ told defendant E. LOPEZ

1  that El Monte Flores gang members were paying taxes to Mexican

2  Mafia members R.G. and R.R. and to tell the El Monte Flores gang

3  members to pay taxes to defendant J. GUTIERREZ instead of

4  Mexican Mafia members R.G. and R.R.

5      79.  On May 26, 2010, defendant TRINIDAD sold approximately

6  13.6 grams of methamphetamine to a law enforcement confidential

7  informant ("CI-1") in El Monte Flores gang territory.

8      80.  On June 1, 2010, defendant TRINIDAD sold approximately

9  12.9 grams of methamphetamine to CI-1 in El Monte Flores gang

10  territory.

11      81.  On June 17, 2010, in a telephone conversation using

12  coded language, defendant CORDERO told defendant M. GARCIA that

13  defendant CORDERO had not sold all of his drugs, and defendant

14  CORDERO asked defendant M. GARCIA to call him later.

15      82.  On June 17, 2010, in a telephone conversation using

16  coded language, defendant CORDERO told defendant M. GARCIA that

17  defendant CORDERO still had one last unit of drugs to sell, and

18  defendant M. GARCIA agreed to give defendant CORDERO more time

19  to sell the drugs before defendant M. GARCIA delivered

20  additional drugs to defendant CORDERO.

21      83.  On June 18, 2010, in a telephone conversation using

22  coded language, defendant BOWERS told defendant M. GARCIA that

23  defendant BOWERS had moved into the "Klingerman" apartments,

24  located in El Monte Flores gang territory, and intended to sell

25  heroin in that area, and defendant M. GARCIA agreed to supply

26  heroin to defendant BOWERS.

27      84.  On June 21, 2010, in a telephone conversation using

28  coded language, defendant E. LOPEZ agreed to purchase three

1  grams of heroin from defendant M. GARCIA to be distributed to an
2  unidentified co-conspirator in exchange for $100.

3       85.  On June 21, 2010, in a telephone conversation using
4  coded language, defendant E. LOPEZ agreed to purchase $50 worth
5  of drugs from defendant M. GARCIA to be distributed to an
6  unidentified co-conspirator.

7       86.  On June 23, 2010, in a telephone conversation using
8  coded language, defendant M. GARCIA agreed to provide heroin to
9  defendant BOWERS the following day, and defendant M. GARCIA told
10 defendant BOWERS that defendant M. GARCIA could not provide the
11 heroin to defendant BOWERS on credit.

12      87.  On June 27, 2010, in a telephone conversation using
13 coded language, co-conspirator Manuel Ramos ("Ramos") told
14 defendant M. GARCIA that defendant RUIZ demanded that co-
15 conspirator Ramos pay $800 per month in extortionate taxes for
16 selling drugs in El Monte Flores gang territory.

17      88.  On June 28, 2010, in a telephone conversation using
18 coded language, defendant E. LOPEZ told defendant M. GARCIA that
19 an unidentified co-conspirator had provided defendant E. LOPEZ
20 with less than the agreed-upon amount of drugs, and defendant E.
21 LOPEZ asked defendant M. GARCIA for permission to tax the
22 unidentified co-conspirator $100 per week for selling drugs in
23 El Monte Flores gang territory on behalf of Mexican Mafia member
24 R.S.

25      89.  On July 2, 2010, defendant ROBERT RODRIGUEZ purchased
26 a money order in the amount of $375 and sent it to an unindicted
27 co-conspirator on behalf of Mexican Mafia member R.S.

28

90.  On July 3, 2010, in a telephone conversation using coded language, co-conspirator Ramos offered to sell 25 grams of heroin to defendant M. GARCIA for $700; and co-conspirator Ramos asked defendant M. GARCIA if defendant M. GARCIA had spoken to defendant RUIZ about lowering co-conspirator Ramos's tax payments from $800 per month to a more reasonable amount.

91.  On July 7, 2010, in a telephone conversation using coded language, defendant R. LOPEZ told defendant M. GARCIA that defendant R. LOPEZ wanted to buy defendant M. GARCIA's drugs only if they were the same quality that defendant R. LOPEZ previously purchased from defendant M. GARCIA; and defendant R. LOPEZ also told defendant M. GARCIA that defendant RUIZ wanted defendant M. GARCIA to contact co-conspirator Ramos because co-conspirator Ramos had not paid defendant RUIZ taxes based on co-conspirator Ramos's drug trafficking in El Monte Flores gang territory.

92.  On July 7, 2010, in a telephone conversation using coded language, defendant R. LOPEZ agreed to buy drugs from defendant M. GARCIA, and defendant R. LOPEZ told defendant M. GARCIA that defendant RUIZ should receive taxes from drug sales in El Monte Flores gang territory.

93.  On July 8, 2010, in a telephone conversation using coded language, defendant E. LOPEZ told defendant M. GARCIA that defendant E. LOPEZ refused to provide drugs to a customer because defendant E. LOPEZ believed the customer worked on behalf of Mexican Mafia member R.G., and defendant E. LOPEZ agreed to contact defendant M. GARCIA when defendant E. LOPEZ was ready to resume selling drugs.

94. On July 10, 2010, in a telephone conversation using coded language, defendant M. GARCIA complained to co-conspirator Melquiades Sanchez, aka "Pelon" ("M. Sanchez"), that the quality of the drugs that co-conspirator M. Sanchez provided to defendant M. GARCIA was poor, and co-conspirator M. Sanchez told defendant M. GARCIA that the drugs were from the same batch from the previous day's supply of drugs.

95. On August 2, 2010, defendant E. LOPEZ sent $140 in extortionate taxes collected by the El Monte Flores gang to defendant J. GUTIERREZ via Western Union.

96. On August 8, 2010, defendant LAFARGO shot at and attempted to kill defendant SALAS in El Monte Flores gang territory over a dispute about drug proceeds and taxes.

97. On August 8, 2010, defendant SALAS shot at defendant LAFARGO and El Monte Flores gang member A.B. over a dispute about drug proceeds and taxes.

98. On August 9, 2010, defendant SALAS possessed a 100-round high-capacity firearm ammunition magazine in his residence, located in El Monte Flores gang territory.

99. On August 31, 2010, defendant PONCE and two unindicted co-conspirators possessed approximately 1.8 kilograms of methamphetamine and 48.6 grams of marijuana, two loaded 9mm firearms, body armor, counterfeit currency, a printer, and a fraudulent driver's license.

100. On September 2, 2010, defendant ROBERT RODRIGUEZ purchased a money order in the amount of $375 and sent it to an unindicted co-conspirator on behalf of Mexican Mafia member R.S.

1    101. On September 9, 2010, in a telephone conversation

2    using coded language, defendant M. GARCIA told co-conspirator M.

3    Sanchez that several of defendant M. GARCIA's customers wanted

4    to buy heroin, and co-conspirator M. Sanchez agreed to provide

5    heroin to defendant M. GARCIA the following day.

6    102. On September 23, 2010, in a telephone conversation

7    using coded language, co-conspirator Ramos told defendant M.

8    GARCIA that co-conspirator Ramos wanted to continue selling

9    drugs in El Monte Flores gang territory but that co-conspirator

10   Ramos feared defendant RUIZ.

11   103. On September 27, 2010, in a telephone conversation

12   using coded language, co-conspirator S. Hernandez told defendant

13   M. GARCIA that an unindicted co-conspirator was wasting profits

14   from drug sales, and defendant M. GARCIA told co-conspirator S.

15   Hernandez that defendant M. GARCIA would place co-conspirator S.

16   Hernandez in charge of their drug distribution if the unindicted

17   co-conspirator continued to waste their profits from drug sales.

18   104. On September 28, 2010, in a telephone conversation

19   using coded language, co-conspirator M. Sanchez told an

20   unindicted co-conspirator to deliver methamphetamine to another

21   unindicted co-conspirator.

22   105. On September 28, 2010, an unindicted co-conspirator

23   delivered approximately .35 grams of methamphetamine to a

24   customer in El Monte Flores gang territory on behalf of co-

25   conspirator M. Sanchez.

26   106. On September 29, 2010, in a telephone conversation

27   using coded language, co-conspirator S. Hernandez told defendant

28   M. GARCIA that an unindicted co-conspirator had been arrested by

41

law enforcement but law enforcement did not find the unindicted co-conspirator's drugs, and defendant M. GARCIA told co-conspirator S. Hernandez to tell unidentified co-conspirators that co-conspirator S. Hernandez and the unindicted co-conspirator worked for defendant M. GARCIA selling drugs.

107. On September 30, 2010, in a telephone conversation using coded language, defendant M. GARCIA asked co-conspirator S. Hernandez how many units of drugs were left and how many units were still available for sale, and co-conspirator S. Hernandez told defendant M. GARCIA that co-conspirator S. Hernandez sold three or four units of drugs the previous day.

108. On September 30, 2010, in a telephone conversation using coded language, co-conspirator S. Hernandez told defendant M. GARCIA that five or six units of drugs remained available for sale, and defendant M. GARCIA warned co-conspirator S. Hernandez that an unidentified rival drug trafficker would likely cause trouble for co-conspirator S. Hernandez soon.

109. On October 3, 2010, in a telephone conversation using coded language, defendant CORDERO agreed to let defendant M. GARCIA use defendant CORDERO's brother to smuggle drugs into the United States from Mexico.

110. On October 7, 2010, in a telephone conversation using coded language, defendant M. GUTIERREZ told defendant J. GUTIERREZ that defendant JARA gave defendant M. GUTIERREZ extortionate taxes collected by the El Monte Flores gang for defendant J. GUTIERREZ, and defendant M. GUTIERREZ agreed to send the money to defendant J. GUTIERREZ.

111. On October 9, 2010, defendant M. GUTIERREZ deposited $250 in extortionate taxes collected by the El Monte Flores gang into her Wells Fargo bank account and sent $100 to defendant J. GUTIERREZ via Western Union.

112. On October 9, 2010, in a telephone conversation using coded language, defendant CORDERO told defendant M. GARCIA that the drugs that defendant M. GARCIA recently provided to defendant CORDERO were not as good as the drugs that defendant M. GARCIA previously provided to defendant CORDERO and that defendant CORDERO's customers became sick after using the drugs.

113. On October 15, 2010, in a telephone conversation using coded language, co-conspirator S. Hernandez agreed to contact a drug source of supply and to try to obtain heroin for defendant M. GARCIA.

114. On October 17, 2010, in a telephone conversation using coded language, defendant R. SANCHEZ told defendant J. GUTIERREZ that defendant R. SANCHEZ was having problems collecting extortionate taxes from unidentified co-conspirators.

115. On October 18, 2010, in a telephone conversation using coded language, co-conspirator Ramos told defendant M. GARCIA that co-conspirator Ramos did not want to talk to defendant ROBERT RODRIGUEZ about selling drugs in El Monte Flores gang territory because co-conspirator Ramos owed defendant RUIZ four months' of tax payments and feared that defendant ROBERT RODRIGUEZ would tell defendant RUIZ that co-conspirator Ramos was selling drugs; and defendant M. GARCIA told co-conspirator Ramos that nobody was allowed to sell drugs in El Monte Flores gang territory without paying "taxes."

116. On October 19, 2010, in a telephone conversation using coded language, co-conspirator S. Hernandez told defendant M. GARCIA that co-conspirator S. Hernandez had sold all of the drugs that defendant M. GARCIA had given co-conspirator S. Hernandez the previous day and that co-conspirator S. Hernandez would drive to defendant M. GARCIA's residence shortly to acquire $200 worth of drugs.

117. On October 20, 2010, defendant R. SANCHEZ sent $200 in extortionate taxes collected by the El Monte Flores gang to defendant J. GUTIERREZ via Western Union.

118. On October 28, 2010, defendant BESERRA possessed approximately 2.2 grams of marijuana and 1.3 grams of methamphetamine, a digital scale, assorted plastic baggies, and a Glock .40 caliber firearm loaded with 13 hollow-point bullets in a residence, located in El Monte Flores gang territory.

119. On November 4, 2010, defendant ROBERT RODRIGUEZ purchased a money order in the amount of $375 and sent it to an unindicted co-conspirator on behalf of Mexican Mafia member R.S.

120. On November 5, 2010, defendant PONCE possessed approximately 17.1 grams of methamphetamine, pay-and-owe sheets, $2,300 in U.S. currency, a digital scale, a Smith & Wesson .357 caliber firearm stolen from the Los Angeles Sheriff's Department San Dimas Station, a loaded Sig Sauer 9mm firearm stolen from the Riverside Sheriff's Department, a Beretta 9mm firearm, a stolen police officer badge from the Inglewood Police Department, a bullet-proof vest, credit cards in the name of victims J.S. and K.T., a document containing multiple names, dates of birth, and social security numbers, a book titled

1  "Hacking Exposed," two counterfeit $100 bills, and a document

2  that contained an image of a $100 bill with "EMF" written above

3  the image.

4  121. On November 12, 2010, in a telephone conversation

5  using coded language, defendant R. LOPEZ agreed to sell drugs to

6  defendant ROBERT RODRIGUEZ.

7  122. On November 13, 2010, in a telephone conversation

8  using coded language, defendant R. SANCHEZ told defendant J.

9  GUTIERREZ that one of defendant R. SANCHEZ's workers was

10  arrested by law enforcement and that Mexican Mafia member R.G.

11  was sending unidentified rival gang members into El Monte Flores

12  gang territory to collect extortionate taxes.

13  123. On November 15, 2010, in a telephone conversation

14  using coded language, defendant RUIZ told defendant J. GUTIERREZ

15  that Mexican Mafia member R.R. had been collecting extortionate

16  taxes in El Monte Flores gang territory, that the El Monte

17  Flores gang had held a meeting and had agreed to disregard

18  Mexican Mafia members R.G. and R.R., and that it was difficult

19  for defendant RUIZ to be in a leadership position and defend El

20  Monte Flores gang territory.

21  124. On November 15, 2010, defendant RUIZ directed an

22  unindicted co-conspirator to send $400 in extortionate taxes

23  collected by the El Monte Flores gang to defendant J. GUTIERREZ.

24  125. On November 15, 2010, in a telephone conversation

25  using coded language, defendant RUIZ told defendant J. GUTIERREZ

26  that defendant RUIZ used an unindicted co-conspirator to send

27  $400 to defendant J. GUTIERREZ.

28

126. On November 17, 2010, in a telephone conversation using coded language, defendant R. LOPEZ agreed to sell drugs to defendant ROBERT RODRIGUEZ.

127. On November 19, 2010, in a telephone conversation using coded language, defendant ROBERT RODRIGUEZ agreed to sell a quantity of drugs to an unidentified co-conspirator in exchange for $200.

128. On November 21, 2010, in a telephone conversation using coded language, defendant BALLESTEROS told defendant ROBERT RODRIGUEZ that defendant BALLESTEROS wanted to purchase approximately 25 grams of heroin for between $575 to $600, and defendant ROBERT RODRIGUEZ agreed to find the heroin for defendant BALLESTEROS.

129. On November 21, 2010, in a telephone conversation using coded language, defendant ROBERT RODRIGUEZ called an unidentified co-conspirator and told the unidentified co-conspirator that one of defendant ROBERT RODRIGUEZ's workers wanted to purchase heroin, and the unindicted co-conspirator agreed to supply heroin to defendant ROBERT RODRIGUEZ.

130. On November 30, 2010, defendant PONCE possessed approximately 18.03 grams of methamphetamine, 2.81 grams of crack cocaine, and .56 grams of powder cocaine, a loaded .40 caliber firearm, and a loaded 9mm semi-automatic rifle.

131. On November 30, 2010, defendant PONCE possessed an "e-card" card embosser and a MAC-10 semi-automatic short-barreled rifle in a storage facility, located in El Monte Flores gang territory.

132. On December 7, 2010, defendant MCCORMICK possessed approximately 3.53 grams of methamphetamine and 7.98 grams of marijuana, as well as $343 in U.S. currency, at an El Monte Flores gang hangout.

133. On December 21, 2010, in a telephone conversation using coded language, defendant M. GUTIERREZ told defendant J. GUTIERREZ that defendant M. GUTIERREZ received $300 in extortionate taxes collected by the El Monte Flores gang for defendant J. GUTIERREZ from an unidentified co-conspirator; and defendant M. GUTIERREZ agreed to send $100 to defendant J. GUTIERREZ and the remaining $200 to an unindicted co-conspirator.

134. On December 21, 2010, defendant M. GUTIERREZ deposited $100 into her Wells Fargo bank account and sent $100 to defendant J. GUTIERREZ via Western Union.

135. On December 24, 2010, defendant MATA and an unindicted co-conspirator shot and killed rival gang member D.D.

136. On January 18, 2011, defendants SALAZAR and SIERRA sold approximately 13.7 grams of methamphetamine to an El Monte Flores gang member known to the Grand Jury in exchange for $600.

137. On January 24, 2011, defendant M. GARCIA possessed approximately 155.4 grams of methamphetamine, $1,740 in U.S. currency, a digital scale, a loaded .357 caliber firearm, a loaded 9mm firearm, a loaded .22 caliber firearm, two loaded .380 caliber firearms, a loaded .40 caliber firearm, a 7.62 caliber rifle, a 9mm firearm, a .45 caliber firearm, and 287 rounds of assorted ammunition in his residence in Azusa, California.

1      138. On January 27, 2011, defendant PONCE possessed

2  approximately .96 grams of methamphetamine, a counterfeit $100

3  bill, a card encoder machine used to create credit cards, a

4  scanner, and a printer in his vehicle in El Monte Flores gang

5  territory.

6      139. On February 7, 2011, defendant GOMEZ threatened to

7  attack victim R.F., pushed R.F. from her car, and stole R.F.'s

8  car in El Monte Flores gang territory.

9      140. On February 9, 2011, in a telephone conversation using

10  coded language, defendant R. SANCHEZ told defendant J. GUTIERREZ

11  that defendant RUIZ was collecting taxes but not sending them to

12  defendant J. GUTIERREZ.

13      141. On February 11, 2011, in a telephone conversation

14  using coded language, defendant R. SANCHEZ told defendant J.

15  GUTIERREZ that when defendant R. SANCHEZ confronted some

16  unidentified El Monte Flores gang members about defendant RUIZ

17  stealing taxes owed to defendant J. GUTIERREZ the unidentified

18  El Monte Flores gang members changed their story.  During the

19  same conversation, defendant R. SANCHEZ added that he did not

20  believe defendant RUIZ was able to collect only $100 in

21  extortionate taxes from the entire El Monte Flores gang

22  territory and believed that defendant RUIZ was stealing taxes

23  owed to defendant J. GUTIERREZ.

24      142. On February 15, 2011, in a telephone conversation

25  using coded language, defendant MCCORMICK told an El Monte

26  Flores gang member known to the Grand Jury that defendant

27  MCCORMICK had sold all of his methamphetamine but agreed to sell

28  additional methamphetamine to the gang member later that week.

143. On February 16, 2011, in a telephone conversation using coded language, defendant M. GUTIERREZ told defendant J. GUTIERREZ that defendant JARA had given defendant M. GUTIERREZ $200 in extortionate taxes collected by the El Monte Flores gang for defendant J. GUTIERREZ, and defendant J. GUTIERREZ told defendant M. GUTIERREZ to keep $100 for herself and an unindicted co-conspirator and to send the remaining $100 to defendant J. GUTIERREZ.

144. On February 17, 2011, defendant M. GUTIERREZ sent $100 in extortionate taxes collected by the El Monte Flores gang to defendant J. GUTIERREZ via Western Union.

145. On February 17, 2011, in a telephone conversation using coded language, defendant MCCORMICK told an El Monte Flores gang member known to the Grand Jury that law enforcement was in the area and to drive to the Greater El Monte Community Hospital to conduct their scheduled drug transaction and look around for law enforcement.

146. On February 17, 2011, defendant MCCORMICK sold approximately 25.5 grams of methamphetamine to an El Monte Flores gang member known to the Grand Jury in exchange for $1,000 in El Monte Flores gang territory.

147. On March 4, 2011, in a telephone conversation using coded language, defendant J. GUTIERREZ told defendant RUIZ that no one in El Monte Flores gang territory should pay taxes to Mexican Mafia member A.V. because Mexican Mafia member A.V.'s membership in the Mexican Mafia was invalid.

148. On March 15, 2011, in a telephone conversation using coded language, defendant R. LOPEZ offered to sell an El Monte

Flores gang member known to the Grand Jury one-half ounce of
heroin in exchange for $375.

149. On March 15, 2011, in a telephone conversation using
coded language, co-conspirator M. Sanchez offered to sell one
pound of methamphetamine to an El Monte Flores gang member known
to the Grand Jury in exchange for $10,000.

150. On March 16, 2011, co-conspirator M. Sanchez gave an
El Monte Flores gang member known to the Grand Jury
approximately .48 grams of methamphetamine as a sample of the
methamphetamine that co-conspirator M. Sanchez was willing to
sell to the gang member.

151. On March 21, 2011, co-conspirator M. Sanchez possessed
approximately 418.4 grams of methamphetamine in a vehicle in El
Monte Flores gang territory.

152. On March 23, 2011, in a telephone conversation using
coded language, defendant J. GUTIERREZ told defendant RUIZ that
defendant R. SANCHEZ worked for defendant J. GUTIERREZ
collecting taxes and that defendant J. GUTIERREZ was giving
orders through defendant R. SANCHEZ.

153. On April 1, 2011, in a telephone conversation using
coded language, defendant M. GUTIERREZ told defendant J.
GUTIERREZ that defendant RUIZ provided an unidentified co-
conspirator $300 in taxes and not the agreed-upon $500 in taxes,
and defendant M. GUTIERREZ told defendant J. GUTIERREZ that
defendant J. GUTIERREZ should charge defendant RUIZ interest on
the remaining taxes defendant RUIZ owed to defendant J.
GUTIERREZ.

154. On April 1, 2011, in a telephone conversation using coded language, defendant J. GUTIERREZ told defendant R. SANCHEZ that defendant RUIZ did not pay the full amount of taxes to defendant J. GUTIERREZ, and defendant J. GUTIERREZ told defendant R. SANCHEZ to collect an additional $200 from defendant RUIZ.

155. On April 19, 2011, defendant R. SANCHEZ sent $200 in extortionate taxes collected by the El Monte Flores gang to defendant J. GUTIERREZ via Western Union.

156. On April 20, 2011, in a telephone conversation using coded language, defendant J. GUTIERREZ told defendant R. SANCHEZ that defendant J. GUTIERREZ told defendant RUIZ that defendant J. GUTIERREZ gave orders through defendant R. SANCHEZ, and defendant J. GUTIERREZ added that defendant RUIZ did not provide the full $500 tax payment owed by defendant RUIZ to defendant J. GUTIERREZ.

157. On April 26, 2011, defendant SALAS told a law enforcement confidential informant ("CI-2") that, on the night defendant SALAS shot at defendant LAFARGO and El Monte Flores gang member A.B., defendant SALAS had his firearm because defendant SALAS was selling a half-pound of drugs to an unidentified co-conspirator.

158. On April 27, 2011, defendant SALAZAR possessed approximately 12.25 grams of methamphetamine and 1.25 grams of marijuana, plastic baggies, a digital scale, a 12-gauge shotgun, four rounds of .22 caliber ammunition, a handheld radio scanner, and $2,416 in U.S. currency inside his residence, located in El Monte Flores gang territory.

159. On May 18, 2011, defendant SALAZAR possessed approximately .14 grams of methamphetamine and 1.33 grams of marijuana, seven marijuana plants, two digital scales, plastic baggies, and $1,332 in U.S. currency hidden in his shoes inside his residence, located in El Monte Flores gang territory.

160. On June 2, 2011, defendant CADENA possessed approximately 47.67 grams of marijuana, 26 marijuana plants, 10 hydrocodone pills, approximately 54.9 grams of a cutting agent, pay-and-owe sheets, a loaded 9mm firearm, a loaded .22 caliber firearm, hundreds of rounds of assorted ammunition, a digital scale smeared with methamphetamine residue, three other digital scales, $27,897 in U.S. currency, and El Monte Flores gang paraphernalia at his residence, located in El Monte Flores gang territory.

161. On June 10, 2011, defendants M. CORTEZ and B. CORTEZ kidnapped victim V.F. from a "Motel 6" in El Monte Flores gang territory and held V.F. hostage at the "Valley Inn" in the City of Industry; and they forced V.F. to withdraw money from an ATM and buy items for defendants M. CORTEZ and B. CORTEZ at Best Buy and RadioShack.

162. On June 16, 2011, defendant R. LOPEZ possessed approximately 2.3 grams of methamphetamine, 4.2 grams of marijuana, 5.5 grams of heroin, 220 oxycontin pills, and four morphine pills in his vehicle as he attempted to enter Mexico from the United States.

163. On June 20, 2011, defendant J. GUTIERREZ wrote a letter to defendant M. GUTIERREZ telling defendant M. GUTIERREZ to keep some of the extortionate taxes collected by the El Monte

Flores gang for herself but to send the remainder to defendant J. GUTIERREZ and an unindicted co-conspirator.

164. On July 1, 2011, defendant SIERRA and an unindicted co-conspirator sold a .380 caliber Bersa firearm to an El Monte Flores gang member known to the Grand Jury in exchange for $200, and defendant SIERRA offered to sell additional firearms to the gang member.

165. On July 12, 2011, defendant RICHARD RODRIGUEZ possessed approximately 8.34 grams of methamphetamine, $625 in U.S. currency, and a loaded .22 caliber firearm in El Monte Flores gang territory.

166. On July 13, 2011, defendant ROBERT RODRIGUEZ told co-conspirator Ramos and an El Monte Flores gang member known to the Grand Jury that there were several Mexican Mafia members who controlled the El Monte Flores gang and that co-conspirator Ramos must pay additional tax money to defendant RUIZ to continue selling drugs in El Monte Flores gang territory; and co-conspirator Ramos told defendant ROBERT RODRIGUEZ that an unidentified co-conspirator working for defendant RUIZ seized one of co-conspirator Ramos's cars that co-conspirator Ramos used to distribute drugs because co-conspirator Ramos owed defendant RUIZ extortionate taxes.

167. On July 20, 2011, defendant J. GUTIERREZ wrote a letter to Mexican Mafia member A.V. telling Mexican Mafia member A.V. that there were already two Mexican Mafia members collecting taxes in El Monte Flores gang territory and that Mexican Mafia member A.V. was encroaching on defendant J. GUTIERREZ's territory; and defendant J. GUTIERREZ signed the

1   letter by modifying the last letter of his moniker, "Chemo," to

2   spell "eme" to represent defendant J. GUTIERREZ's membership

3   within the Mexican Mafia.

4        168. On July 20, 2011, in a telephone conversation using

5   coded language, defendant R. LOPEZ agreed to sell 25 grams of

6   heroin to an El Monte Flores gang member known to the Grand Jury

7   in exchange for $850.

8        169. On August 2, 2011, defendant R. LOPEZ sold

9   approximately 25.4 grams of heroin to an El Monte Flores gang

10  member known to the Grand Jury in El Monte Flores gang

11  territory, and defendant R. LOPEZ told the gang member that the

12  quality of the heroin would be better next time.

13       170. On August 2, 2011, in a telephone conversation using

14  coded language, defendant LAFARGO told an El Monte Flores gang

15  member known to the Grand Jury that an unidentified co-

16  conspirator would pick up drugs in the near future and attempt

17  to smuggle those drugs into Calipatria State Prison for

18  defendant LAFARGO.

19       171. On August 15, 2011, defendant R. LOPEZ possessed

20  approximately 77.4 grams of heroin in his vehicle in El Monte

21  Flores gang territory.

22       172. On August 16, 2011, defendant R. LOPEZ possessed a .40

23  caliber firearm, a loaded .45 caliber firearm, 61 rounds of .45

24  caliber ammunition, approximately .02 grams of methamphetamine,

25  three MDMA tablets, $1,031 in U.S. currency, and a cutting agent

26  at his residence, located in El Monte Flores gang territory.

27       173. On August 25, 2011, in a telephone conversation using

28  coded language, co-conspirator Ramos told an El Monte Flores

1  gang member known to the Grand Jury that defendant RUIZ was

2  taxing co-conspirator Ramos for selling drugs in El Monte Flores

3  gang territory, that co-conspirator Ramos would pay defendant

4  RUIZ $200 per month in tax money, and that co-conspirator Ramos

5  would use defendant E. LOPEZ to sell drugs in El Monte Flores

6  gang territory.

7      174. On September 11, 2011, defendant J. GUTIERREZ sent a

8  letter to defendants M. GARCIA and E. LOPEZ telling defendants

9  M. GARCIA and E. LOPEZ not to discuss extortionate taxes

10  collected by the El Monte Flores gang in their communications

11  because federal law enforcement officers read defendant J.

12  GUTIERREZ's mail; and defendant J. GUTIERREZ signed the letter

13  by modifying the last letter of his moniker, "Chemo," to spell

14  "eme" to represent defendant J. GUTIERREZ's membership within

15  the Mexican Mafia.

16      175. On September 21, 2011, defendant E. LOPEZ possessed

17  approximately .59 grams of heroin and three rounds of .380

18  caliber ammunition.

19      176. On October 4, 2011, in a telephone conversation using

20  coded language, defendant M. GUTIERREZ told defendant J.

21  GUTIERREZ that defendant R. SANCHEZ was taxing people in El

22  Monte Flores gang territory on behalf of defendant J. GUTIERREZ.

23      177. On October 15, 2011, defendant JARA visited Mexican

24  Mafia member C.A. at Pelican Bay State Prison and told Mexican

25  Mafia member C.A. that defendant JARA was going to collect taxes

26  from an unidentified co-conspirator who was engaged in drug

27  trafficking, and Mexican Mafia member C.A. told defendant JARA

28  that defendant RUIZ was not allowed to sell drugs or collect

1    taxes in El Monte Flores gang territory because defendant RUIZ

2    changes his allegiance to different Mexican Mafia members to

3    avoid paying taxes on drug trafficking proceeds.

4         178. On October 16, 2011, defendant JARA visited Mexican

5    Mafia member C.A. in Pelican Bay State Prison and told Mexican

6    Mafia member C.A. that an unidentified co-conspirator had been

7    making monthly tax payments to Mexican Mafia member C.A. and

8    that defendant JARA passed along Mexican Mafia member C.A.'s

9    message to defendants COFER and RUIZ that defendant RUIZ was no

10   longer allowed to sell drugs or collect taxes in El Monte Flores

11   gang territory.

12        179. On October 19, 2011, in a text message by telephone,

13   an unidentified co-conspirator offered to sell defendant JARA

14   high quality drugs for $10,200 or lower quality drugs for

15   $9,500.

16        180. On October 19, 2011, in a text message by telephone,

17   defendant JARA asked an unidentified co-conspirator for a drug

18   sample.

19        181. On October 31, 2011, in a telephone conversation using

20   coded language, defendant RUIZ told defendant J. GARCIA that

21   Mexican Mafia member A.V. was attempting to collect taxes from

22   defendant RUIZ but defendant RUIZ was already paying taxes to

23   defendant J. GUTIERREZ, who was incarcerated outside of

24   California; and defendant J. GARCIA told defendant RUIZ that he

25   would stand by defendant RUIZ and protect El Monte Flores gang

26   territory from Mexican Mafia member A.V. and that defendant J.

27   GARCIA was getting other El Monte Flores gang members ready to

28

1  protect El Monte Flores gang territory from Mexican Mafia member

2  A.V.

3       182. On November 4, 2011, defendant M. GUTIERREZ sent $100

4  in tax proceeds to defendant J. GUTIERREZ via Western Union.

5       183. On November 6, 2011, in a telephone conversation using

6  coded language, defendant RUIZ agreed to sell drugs to an

7  unidentified co-conspirator.

8       184. On November 6, 2011, in a telephone conversation using

9  coded language, defendant RUIZ called defendant JARA and

10  arranged to meet the following day.

11       185. On November 7, 2011, defendants COFER, RUIZ, and JARA

12  met at the General Welfare office in El Monte Flores gang

13  territory to discuss the collection of extortionate taxes.

14       186. On November 10, 2011, defendants ROBERT RODRIGUEZ,

15  COFER, RUIZ, and JARA, and an El Monte Flores gang member known

16  to the Grand Jury met at "Don Beto" restaurant in El Monte

17  Flores gang territory to discuss matters related to the criminal

18  activities of the El Monte Flores gang.  During the meeting,

19  defendant JARA told defendants ROBERT RODRIGUEZ, COFER, and RUIZ

20  that defendant JARA represented Mexican Mafia member C.A. and

21  that Mexican Mafia member C.A. had ordered defendants ROBERT

22  RODRIGUEZ and RUIZ to stop collecting taxes in El Monte Flores

23  gang territory; and, in response, defendant RUIZ told defendant

24  JARA that defendant RUIZ would continue to collect taxes in El

25  Monte Flores gang territory on behalf of defendant J. GUTIERREZ.

26       187. On November 12, 2011, defendant JARA visited Mexican

27  Mafia member C.A. in Pelican Bay State Prison, and Mexican Mafia

28  member C.A. told defendant JARA that defendant COFER was

authorized to attack unidentified individuals who collect taxes in El Monte Flores gang territory without authorization, but defendant COFER must give the unidentified individuals a warning first.

188. On November 23, 2011, in a text message by telephone, defendant COFER told defendant JARA that defendant COFER just collected $200 in taxes from defendant RUIZ.

189. On December 6, 2011, in a telephone conversation using coded language, defendant COFER agreed to sell methamphetamine to an El Monte Flores gang member known to the Grand Jury later that day.

190. On December 6, 2011, defendant COFER sold approximately 13.4 grams of methamphetamine to an El Monte Flores gang member known to the Grand Jury.

191. On December 22, 2011, in a telephone conversation using coded language, defendant COFER told defendant MACHADO that unidentified co-conspirators were hiding from defendant COFER because they owed defendant COFER money, and defendant MACHADO agreed to go with defendant COFER to an unidentified co-conspirator's residence that night at midnight to collect payment.

192. On December 22, 2011, in a telephone conversation using coded language, defendant MACHADO offered to shoot an unidentified person the following day because defendant COFER had a dispute with the unidentified person, and defendant COFER authorized the shooting.

193. On December 26, 2011, in a telephone conversation using coded language, defendant COFER told defendant JARA that

defendant RUIZ failed to show up for a meeting to provide

defendant COFER with defendant RUIZ's share of extortionate

taxes collected by the El Monte Flores gang, and defendant JARA

told defendant COFER that defendant JARA needed the taxes before

defendant JARA visited Mexican Mafia member C.A. at Pelican Bay

State Prison.

194. On December 26, 2011, in a telephone conversation

using coded language, defendant COFER told defendant CASTELLANO

that defendant COFER was going to purchase additional drugs for

resale, but defendant COFER needed defendant CASTELLANO's share

of the money.

195. On December 26, 2011, in a telephone conversation

using coded language, defendant CASTELLANO told defendant COFER

that defendant CASTELLANO was losing drug customers because

defendant COFER had provided defendant CASTELLANO with less than

their agreed-upon amount of drugs and defendant CASTELLANO

therefore could not supply drugs to his customers.

196. On December 27, 2011, defendant JARA sent $100 in

extortionate taxes collected by the El Monte Flores gang to

Mexican Mafia member C.A. via wire transfer.

197. On December 27, 2011, in a telephone conversation

using coded language, defendant MACHADO requested two grams of

heroin from defendant COFER, and defendant COFER told defendant

MACHADO that the smallest quantity of heroin defendant COFER

would sell was approximately six grams.

198. On December 27, 2011, in a telephone conversation

using coded language, defendant MACHADO told defendant COFER

that the two grams of heroin he requested was for an El Monte

1  Flores gang member and asked defendant COFER the price for six

2  grams of heroin; and defendant COFER told defendant MACHADO that

3  the price was $250 for six grams of heroin.

4      199. On December 27, 2011, in a telephone conversation

5  using coded language, defendant COFER told defendant MACHADO

6  that defendant COFER was on his way to Alhambra, California, to

7  tell an unidentified co-conspirator that if the unidentified co-

8  conspirator did not pay defendant COFER for 40 grams of heroin

9  then defendant COFER would assault the unidentified co-

10  conspirator, and defendant MACHADO asked to go with defendant

11  COFER.

12      200. On December 27, 2011, in a telephone conversation

13  using coded language, defendant MACHADO offered to shoot the

14  unidentified co-conspirator who defendant COFER was visiting in

15  Alhambra, California, if defendant COFER wanted to cause harm to

16  the co-conspirator, and defendant COFER agreed to pick up

17  defendant MACHADO after defendant COFER dropped off defendant

18  COFER's girlfriend's daughter and then drive to Alhambra,

19  California, to meet the unidentified co-conspirator.

20      201. On December 27, 2011, in a telephone conversation

21  using coded language, defendant MACHADO told defendant COFER

22  that defendant ROBERT RODRIGUEZ attempted to collect taxes from

23  an unidentified female co-conspirator who sold Vicodin in El

24  Monte Flores gang territory, and defendant COFER told defendant

25  MACHADO that defendant ROBERT RODRIGUEZ should not have

26  attempted to collect taxes from the female co-conspirator based

27  on defendant COFER's conversations with Mexican Mafia member

28  C.A. and defendant J. GUTIERREZ.

202. On December 27, 2011, in a telephone conversation using coded language, defendant ROBERT RODRIGUEZ told defendant COFER that defendant BOWERS attempted to recruit two unidentified female co-conspirators who sold drugs on behalf of defendant ROBERT RODRIGUEZ, and defendant COFER agreed to talk to defendant BOWERS.

203. On December 31, 2011, defendant TRINIDAD and unidentified co-conspirators attacked and beat victim J.R. in El Monte Flores gang territory.

204. On January 3, 2012, in a telephone conversation using coded language, defendant MACHADO asked defendant COFER for ammunition, and defendant COFER told defendant MACHADO that defendant COFER would call an unidentified co-conspirator and deliver the ammunition later that day.

205. On January 4, 2012, in a telephone conversation using coded language, defendant RAMIREZ told defendant COFER that an unidentified co-conspirator was not paying taxes.

206. On January 4, 2012, in a telephone conversation using coded language, defendant RAMIREZ told defendant COFER that an unidentified co-conspirator had paid taxes and someone had told law enforcement that defendants COFER and RAMIREZ were selling drugs at "Crawford's Plaza" in El Monte Flores gang territory.

207. On January 6, 2012, in a telephone conversation using coded language, defendant RAMIREZ told defendant COFER that a vendor at "Crawford's Plaza" would not pay taxes, and defendant RAMIREZ told defendant COFER that it was defendant RAMIREZ's problem because defendant RAMIREZ was in charge of collecting taxes from "Crawford's Plaza."

1       208. On January 6, 2012, in a telephone conversation using
2   coded language, defendant RAMIREZ told defendant COFER that a
3   fraudulent document vendor at "Crawford's Plaza" would not pay
4   taxes, and defendant COFER agreed to lower the tax to $15 per
5   week and told defendant RAMIREZ to talk to the vendor's brother.

6       209. On January 7, 2012, in a telephone conversation using
7   coded language, defendant COFER told defendant MACHADO that
8   defendant COFER had assaulted an unidentified victim, defendant
9   MACHADO told defendant COFER that he would assault the victim
10  for defendant COFER next time, and defendant MACHADO asked
11  defendant COFER for ammunition for a .45 caliber firearm.

12      210. On January 7, 2012, in a telephone conversation using
13  coded language, defendant ROBERT RODRIGUEZ told defendant COFER
14  that defendant ROBERT RODRIGUEZ wanted to talk to defendant
15  BOWERS about defendant BOWERS's attempt to recruit two
16  unidentified female co-conspirators who sold drugs on behalf of
17  defendant ROBERT RODRIGUEZ.

18      211. On January 9, 2012, in a telephone conversation using
19  coded language, defendant MACHADO told defendant COFER that
20  defendant MACHADO had robbed an unidentified victim on the
21  street of $20, and defendant COFER agreed to sell defendant
22  MACHADO $20 worth of drugs.

23      212. On January 9, 2012, in a telephone conversation using
24  coded language, defendant RAMIREZ told defendant COFER that
25  defendant RAMIREZ told a new fraudulent document vendor at
26  "Crawford's Plaza" that the vendor must pay taxes in the amount
27  of $5 for each item the vendor sold but the vendor resisted, and
28  defendant RAMIREZ asked defendant COFER not to get involved yet.

213. On January 9, 2012, in a telephone conversation using coded language, defendant RAMIREZ agreed to deliver extortionate taxes collected by the El Monte Flores gang to defendant COFER's residence.

214. On January 10, 2012, in a telephone conversation using coded language, defendant COFER agreed to let defendant MUNOZ borrow a firearm.

215. On January 10, 2012, in a telephone conversation using coded language, co-conspirator Pedro Sanchez, aka "Toro" ("P. Sanchez"), told defendant COFER that co-conspirator P. Sanchez had been selling drugs all day and asked to meet with defendant COFER later that day.

216. On January 11, 2012, in a telephone conversation using coded language, defendant RAMIREZ told defendant COFER that an unidentified rival was going to try to take control of "Crawford's Plaza" from defendant COFER.

217. On January 12, 2012, in a telephone conversation using coded language, co-conspirator P. Sanchez agreed to supply drugs to defendant COFER.

218. On January 12, 2012, in a telephone conversation using coded language, defendant COFER agreed to sell three ounces of methamphetamine to defendant MACHADO in exchange for $2,000, and defendant MACHADO told defendant COFER that defendant MACHADO's customers needed the methamphetamine as soon as possible.

219. On January 14, 2012, in a telephone conversation using coded language, defendant MUNOZ asked defendant COFER if defendant MUNOZ could borrow an instrument used to seal baggies for drugs for transport or sale.

220. On January 16, 2012, in a telephone conversation using coded language, defendant B. CORTEZ told defendant COFER that defendant B. CORTEZ possessed heroin and asked defendant COFER if defendant COFER knew of anyone who wanted to purchase heroin.

221. On January 18, 2012, in a telephone conversation using coded language, defendant COFER told co-conspirator P. Sanchez that defendant COFER needed additional drugs but asked co-conspirator P. Sanchez to lower the price for the drugs he was selling, and co-conspirator P. Sanchez agreed to discuss a lower price when they met in person at a restaurant in El Monte Flores gang territory.

222. On January 19, 2012, in a telephone conversation using coded language, defendant JARA told defendant CASTELLANO that an unindicted co-conspirator wanted to purchase 40 oxycontin pills from defendant CASTELLANO in exchange for $60, but defendant CASTELLANO refused to sell the pills for that price and told defendant JARA that defendant CASTELLANO usually sells the oxycontin pills for $4 per pill.

223. On January 22, 2012, defendant MUNOZ possessed a loaded Rossi .32 caliber revolver and a loaded Colt .38 caliber revolver in his vehicle in El Monte Flores gang territory.

224. On January 22, 2012, defendant CASTELLANO sent $55 in extortionate taxes collected by the El Monte Flores gang to Mexican Mafia member C.A. via credit card.

225. On January 24, 2012, in a telephone conversation using coded language, defendant COFER agreed to sell methamphetamine the following day to an El Monte Flores gang member known to the Grand Jury.

226. On January 25, 2012, defendant COFER sold approximately 12.9 grams of methamphetamine to an El Monte Flores gang member known to the Grand Jury.

227. On January 25, 2012, in a telephone conversation using coded language, defendant B. CORTEZ told an El Monte Flores gang member known to the Grand Jury that defendant B. CORTEZ had sold only a small quantity of heroin and that defendant B. CORTEZ still possessed approximately one ounce of heroin for sale.

228. On January 25, 2012, in a telephone conversation using coded language, defendant B. CORTEZ offered to sell one ounce of heroin to an El Monte Flores gang member known to the Grand Jury in exchange for $800.

229. On January 25, 2012, defendant B. CORTEZ sold approximately 23.7 grams of heroin to an El Monte Flores gang member known to the Grand Jury in exchange for $800.

230. On January 26, 2012, defendant MUNOZ possessed a Raven Arms .25 caliber firearm in his vehicle in El Monte Flores gang territory.

231. On January 26, 2012, defendant BALLESTEROS possessed rubber balloons, a digital scale, and El Monte Flores gang paraphernalia in his residence, located in El Monte Flores gang territory.

232. On January 31, 2012, defendant J. GARCIA, while driving in El Monte Flores gang territory, threw a loaded 9mm firearm from his vehicle when he saw a police car.

233. On February 11, 2012, in a telephone conversation using coded language, defendant BOWERS told defendant COFER that defendant BOWERS lost drugs when an unidentified female co-

conspirator accidentally dropped the drugs in the toilet while at a "Jack In The Box" restaurant, and defendants COFER and BOWERS agreed to bring drugs to a party that night.

234. On February 13, 2012, in a telephone conversation using coded language, co-conspirator P. Sanchez agreed to provide additional drugs to defendant COFER.

235. On February 15, 2012, in a telephone conversation using coded language, co-conspirator P. Sanchez agreed to provide additional drugs to defendant COFER before co-conspirator P. Sanchez drove to Ensenada, Mexico, to acquire additional drugs.

236. On February 16, 2012, in a telephone conversation using coded language, defendant MUNOZ offered to sell drugs to defendant COFER at a discounted price of $400.

237. On February 16, 2012, in a telephone conversation using coded language, defendant COFER told defendant MUNOZ that defendant COFER had the money for the drugs defendant MUNOZ had offered to sell and was outside waiting for defendant MUNOZ.

238. On February 16, 2012, co-conspirator P. Sanchez met defendant COFER at a "Mariscos Uruapan" restaurant in Irwindale, California, for the purpose of providing defendant COFER with drugs.

239. On February 16, 2012, in a telephone conversation using coded language, defendant RUIZ told defendant J. GUTIERREZ that defendant RUIZ would collect tax payments from an unidentified co-conspirator later that week and promised to send the money to defendant J. GUTIERREZ shortly.

1    240. On February 18, 2012, in a telephone conversation

2    using coded language, defendant SALAZAR asked defendant COFER if

3    defendant SALAZAR could buy drugs on credit because defendant

4    SALAZAR had only $350, and defendant SALAZAR promised to pay

5    defendant COFER the remaining money for the drugs the following

6    day.

7    241. On February 19, 2012, in a telephone conversation

8    using coded language, defendant SALAZAR told defendant COFER

9    that defendant SALAZAR had the remaining money for the drug

10   transaction that took place between them the previous day.

11   242. On February 19, 2012, in a telephone conversation

12   using coded language, defendant SALAZAR told defendant COFER

13   that the drugs weighed 6.4 grams, which was less than the

14   agreed-upon weight, and defendant COFER agreed to provide the

15   remaining drugs to defendant SALAZAR at a later date.

16   243. On February 19, 2012, defendant MATA possessed a

17   loaded .380 caliber semi-automatic pistol, approximately .03

18   grams of methamphetamine, three stolen credit cards, and a

19   stolen social security card in a motel room in West Covina,

20   California.

21   244. On February 20, 2012, defendant RUIZ caused $400 in

22   extortionate taxes collected by the El Monte Flores gang to be

23   sent to defendant J. GUTIERREZ via Western Union.

24   245. On February 23, 2012, in a telephone conversation

25   using coded language, defendant LAFARGO told defendant COFER

26   that defendant LAFARGO's dispute with defendant SALAS started

27   when defendant SALAS directed an unidentified co-conspirator to

28   sell drugs in the same area where defendant LAFARGO was selling

1    drugs on behalf of Mexican Mafia member C.A. and defendant J.

2    GUTIERREZ, that defendants RUIZ and JARA were unable to resolve

3    the dispute, that defendants SALAS and TRINIDAD later confronted

4    and pointed firearms at defendant LAFARGO in front of defendant

5    LAFARGO's residence, and that defendant LAFARGO retaliated by

6    shooting at defendant SALAS but defendant LAFARGO missed and

7    defendant SALAS chased and shot at defendant LAFARGO and El

8    Monte Flores gang member A.B. after their car crashed.

9         246. On February 23, 2012, in a telephone conversation

10   using coded language, defendant LAFARGO told defendant COFER

11   that defendant LAFARGO was selling drugs for the El Monte Flores

12   gang and the Mexican Mafia before he was arrested and that

13   defendant LAFARGO was now selling drugs in prison, and defendant

14   LAFARGO asked defendant COFER to contact an unidentified co-

15   conspirator and tell the co-conspirator that defendant LAFARGO

16   worked for defendant COFER.

17        247. On February 23, 2012, defendant BESERRA possessed

18   approximately 6.0 grams of methamphetamine and 39.83 grams of

19   marijuana, pay-and-owe sheets, a digital scale, plastic baggies,

20   a knife, gang paraphernalia, and $2,811 in U.S. currency in his

21   residence, located in El Monte Flores gang territory.

22        248. On February 24, 2012, in a telephone conversation

23   using coded language, defendant CASTELLANO told defendant COFER

24   that defendant CASTELLANO had been stopped by law enforcement

25   officers on "Roseglen Street" in El Monte, and defendant COFER

26   told defendant CASTELLANO to drink lots of water and to use the

27   bathroom to flush the packaged drugs out of her stomach.

28

1    249. On February 24, 2012, defendant SALAZAR possessed
2  approximately 1.9 grams of methamphetamine in his vehicle while
3  parked at the "Gibson Inn Motel," located in El Monte Flores
4  gang territory.

5    250. On February 26, 2012, in a telephone conversation
6  using coded language, defendant JARA told defendant COFER that
7  defendant JARA did not want to work with defendant RUIZ, and
8  defendant COFER told defendant JARA that defendants COFER and
9  RUIZ had reached an agreement and were collecting taxes together
10  in El Monte Flores gang territory.

11    251. On March 1, 2012, in a telephone conversation using
12  coded language, defendant COFER told defendant JARA that
13  defendants COFER and RUIZ were going to meet at the "Klingerman"
14  apartments in El Monte Flores gang territory later that day
15  because they were expecting a telephone call from defendant J.
16  GUTIERREZ to resolve a dispute over who could collect taxes at
17  "Crawford's Plaza."

18    252. On March 1, 2012, in a telephone conversation using
19  coded language, defendant J. GUTIERREZ told defendants COFER and
20  RUIZ that defendant RUIZ was allowed to collect taxes at
21  "Crawford's Plaza" on behalf of defendant J. GUTIERREZ because
22  defendant J. GUTIERREZ had been collecting taxes at "Crawford's
23  Plaza" before defendant COFER and Mexican Mafia member C.A.
24  started collecting taxes at that location, and defendant J.
25  GUTIERREZ refused to speak to defendant JARA to try to resolve
26  the dispute because defendant JARA was not providing Mexican
27  Mafia member C.A. all of the facts surrounding the dispute.

28

253. On March 1, 2012, in a telephone conversation using coded language, defendant COFER told defendant JARA that defendant J. GUTIERREZ had decided that defendant RUIZ was allowed to collect taxes from "Crawford's Plaza" and that defendant J. GUTIERREZ did not want to talk to defendant JARA to resolve the dispute, and defendant JARA agreed to write a letter to Mexican Mafia member C.A. to inform Mexican Mafia member C.A. of the outcome of the dispute.

254. On March 6, 2012, defendant COFER possessed approximately 7.9 grams of methamphetamine, a taser gun, a digital scale, an empty bottle of oxycontin pills prescribed to defendant CASTELLANO, debit cards in the name of defendant SALAZAR, a credit card reader machine, and prison letters from Mexican Mafia members.

255. On March 7, 2012, in a telephone conversation using coded language, defendant COFER told defendant CASTELLANO that defendant COFER had been arrested after law enforcement found defendant COFER with methamphetamine in his possession, and defendant CASTELLANO agreed to collect taxes with defendant MACHADO.

256. On March 9, 2012, in a telephone conversation using coded language, defendant COFER told defendant CASTELLANO to collect taxes with defendant MACHADO from defendant LOMELI and other unidentified co-conspirators while defendant COFER was incarcerated, and defendant CASTELLANO agreed to collect the taxes and provide the taxes collected to defendant JARA.

257. On March 20, 2012, in a telephone conversation using coded language, defendant B. CORTEZ offered to sell 25 grams of

high quality heroin to an El Monte Flores gang member known to the Grand Jury in exchange for $700, or 25 grams of lower a quality heroin in exchange for $450.

258. On March 25, 2012, defendant JARA visited Mexican Mafia member C.A. in Pelican Bay State Prison, and defendant JARA told Mexican Mafia member C.A. that defendant RUIZ was still working on behalf of defendant J. GUTIERREZ and requested authority to have defendant RUIZ killed, but Mexican Mafia member C.A. told defendant JARA to wait on killing defendant RUIZ.

259. On March 27, 2012, in a telephone conversation using coded language, defendant RUIZ told defendant J. GUTIERREZ that defendant RUIZ was working to ensure that everyone was paying taxes to defendant J. GUTIERREZ, that defendant BESERRA sent money to defendant J. GUTIERREZ, and that defendant JARA was not delivering messages to Mexican Mafia member C.A.

260. On March 27, 2012, in a telephone conversation using coded language, defendant J. GUTIERREZ told defendant RUIZ that defendants R. SANCHEZ and RUIZ needed to cooperate on all El Monte Flores gang issues and that the Maxon Murders made the El Monte Flores gang look bad in the eyes of the Mexican Mafia.

261. On April 3, 2012, in a text message by telephone, defendant B. CORTEZ told an El Monte Flores gang member known to the Grand Jury that she wanted to purchase a firearm in exchange for $200.

262. On April 4, 2012, defendant CORDERO possessed approximately 2.4 grams of methamphetamine, a digital scale, six rounds of .357 ammunition, and one round of 12-gauge shotgun

ammunition in his residence, located in El Monte Flores gang territory.

263. On April 10, 2012, in a text message by telephone, defendant B. CORTEZ told defendant M. CORTEZ that defendant B. CORTEZ had heroin for sale and asked defendant M. CORTEZ to find customers for the heroin.

264. On April 17, 2012, co-conspirator S. Hernandez possessed approximately 2.0 grams of methamphetamine, plastic baggies, and a scale in El Monte Flores gang territory.

265. On April 18, 2012, defendant COFER told an El Monte Flores gang member known to the Grand Jury that defendant COFER paid taxes to Mexican Mafia member C.A. and defendant JARA, that defendant RUIZ and other El Monte Flores gang members had to pay taxes to the Mexican Mafia for drug sales inside El Monte Flores gang territory but were allowed to sell drugs outside of El Monte Flores gang territory without paying taxes to the Mexican Mafia, and that defendant BESERRA sells drugs on behalf of defendant J. GUTIERREZ.

266. On April 21, 2012, defendant MATA and an unindicted co-conspirator followed victim T.S. to T.S.'s home in rival gang territory, and they attempted to kill T.S. by firing two shots at T.S. in front of T.S.'s home.

267. On May 9, 2012, defendant MACHADO possessed 57 rounds of 12-gauge shotgun ammunition, four shaved automobile keys, handcuffs, and El Monte Flores gang paraphernalia at his residence, located in El Monte Flores gang territory.

268. On May 17, 2012, in a telephone conversation using coded language, defendant GOMEZ agreed to sell drugs to defendant B. CORTEZ later that day.

269. On May 17, 2012, in a telephone conversation using coded language, defendant GOMEZ told defendant B. CORTEZ that defendant GOMEZ would arrive at the meeting location for their scheduled drug transaction in five minutes, and defendant GOMEZ jokingly told defendant B. CORTEZ to "say no to drugs."

270. On May 18, 2012, in a telephone conversation using coded language, defendant B. CORTEZ told defendant GOMEZ that defendant B. CORTEZ urgently needed drugs and that defendant GOMEZ's drugs were high quality.

271. On May 24, 2012, defendant MATA and an unindicted El Monte Flores gang member drove a stolen Porsche and led law enforcement officers on a high-speed car chase through El Monte Flores gang territory.

272. On May 29, 2012, defendant BESERRA possessed a digital scale smeared with methamphetamine residue, one round of 12-gauge ammunition, as well as stolen checks, bank records, credit cards, and California identification cards, all in his residence, located in El Monte Flores gang territory.

273. On June 3, 2012, defendant COFER possessed approximately 31.9 grams of methamphetamine and .12 grams of heroin, as well as a loaded .380 caliber firearm, at the "Monte Carlo Inn" in Azusa, California.

274. On June 4, 2012, in a telephone conversation using coded language, defendant R. SANCHEZ told defendant J. GUTIERREZ that Mexican Mafia member A.V. was encroaching on El Monte

1   Flores gang territory, and defendant J. GUTIERREZ told defendant

2   R. SANCHEZ that defendant J. GUTIERREZ regretted voting in favor

3   of Mexican Mafia member A.V.'s induction into the Mexican Mafia

4   as a member.

5       275. On June 14, 2012, co-conspirator Ramos possessed

6   approximately 18.07 grams of heroin in his vehicle.

7       276. On June 14, 2012, co-conspirator Ramos possessed pay-

8   and-owe sheets and a container of a drug cutting agent at his

9   residence.

10      277. On June 18, 2012, defendant A. HERNANDEZ possessed

11  approximately 3.19 grams of methamphetamine packaged for

12  distribution and attempted to rent a room at the "Gibson Inn

13  Motel," located in El Monte Flores gang territory, to use as a

14  location to sell the methamphetamine.

15      278. On June 23, 2012, defendants RUIZ and BALLESTEROS and

16  80 other El Monte Flores gang members held a meeting at the Boys

17  & Girls Club of America, during which a fight occurred between

18  unidentified El Monte Flores gang members.

19      279. On June 26, 2012, defendant JARA sent $115 in

20  extortionate taxes collected by the El Monte Flores gang to

21  Mexican Mafia member C.A. via wire transfer.

22      280. On July 3, 2012, defendant R. SANCHEZ possessed

23  approximately 26.9 grams of methamphetamine, a loaded .22

24  caliber firearm, a silencer threaded to attach to the barrel of

25  the .22 caliber firearm, a loaded .38 caliber revolver, 192

26  rounds of .22 caliber ammunition, and a bullet-proof vest in his

27  residence.

28

281. On July 11, 2012, in a telephone conversation using coded language, defendant TRINIDAD agreed to sell methamphetamine to a law enforcement confidential informant ("CI-3") in exchange for $2,300 to be paid later that day.

282. On July 11, 2012, defendant TRINIDAD sold approximately 108.9 grams of methamphetamine to CI-3 in exchange for $2,300.

283. On July 21, 2012, defendant BESERRA possessed approximately 2.43 grams of methamphetamine, packaged for distribution, in his vehicle.

284. On July 21, 2012, in a text message by telephone, defendant B. CORTEZ offered to trade an AK-47 assault rifle to an El Monte Flores gang member known to the Grand Jury in exchange for two pistols.

285. On July 21, 2012, in a text message by telephone, defendant B. CORTEZ agreed to sell an AK-47 assault rifle to an El Monte Flores gang member known to the Grand Jury in exchange for $800.

286. On July 26, 2012, defendant JURADO possessed approximately 1.61 grams of heroin, plastic baggies, and $277 in U.S. currency in his residence, located in El Monte Flores gang territory.

287. On August 1, 2012, defendant J. GARCIA possessed a loaded .45 caliber firearm, a loaded .32 caliber firearm with an "F" sticker, approximately 13.6 grams of methamphetamine and 25.2 grams of cocaine, a digital scale, $559 in U.S. currency, and El Monte Flores gang paraphernalia in his residence, located in El Monte Flores gang territory.

288. On August 19, 2012, defendant COFER possessed a Western Union receipt in the amount of $380.

289. On September 3, 2012, an unidentified rival gang member from the Duarte street gang called an El Monte Flores gang member known to the Grand Jury and asked the gang member to tell defendant COFER that the unidentified rival gang member wanted to talk to defendant COFER about how defendant BALLESTEROS stabbed a Duarte gang member in Huntington Beach, California, in retaliation for the murder of an El Monte Flores gang member, and the unidentified rival gang member was upset because the Duarte gang had paid taxes to the El Monte Flores gang as compensation for the murder of the El Monte Flores gang member.

290. On September 3, 2012, defendant COFER called an unidentified rival gang member from the Duarte street gang and told the unidentified rival gang member that he would find out why the Duarte gang member was stabbed in Huntington Beach, California.

291. On September 22, 2012, defendant A. HERNANDEZ and an unindicted El Monte Flores gang member used force to take baseball hats from the "Su Casa" store, located in El Monte Flores gang territory, while the unindicted El Monte Flores gang member possessed approximately 2.15 grams of methamphetamine packaged for distribution and 6.75 grams of marijuana.

292. On September 29, 2012, defendants RUIZ and BALLESTEROS and an El Monte Flores gang member known to the Grand Jury met at the Los Angeles County Fair, and defendant BALLESTEROS admitted that defendant BALLESTEROS and an unindicted co-

1  conspirator fought an unidentified rival gang member from the

2  Duarte street gang in Huntington Beach, California, and that the

3  unidentified Duarte gang member was stabbed in the leg during

4  the fight.

5      293. On October 2, 2012, in a telephone conversation using

6  coded language, defendant LOMELI agreed to sell one-half ounce

7  of methamphetamine to a law enforcement confidential informant

8  ("CI-4") in exchange for $300.

9      294. On October 2, 2012, defendant LOMELI sold

10 approximately 13.3 grams of methamphetamine to CI-4 in exchange

11 for $300.

12     295. On October 6, 2012, defendant LOMELI went to the Boys

13 & Girls Club of America and offered to sell methamphetamine to

14 an El Monte Flores gang member known to the Grand Jury, and

15 defendant LOMELI told the gang member that defendant LOMELI's

16 methamphetamine source of supply quoted defendant LOMELI low

17 prices.

18     296. On October 6, 2012, defendant BALLESTEROS went to the

19 Boys & Girls Club of America and told an El Monte Flores gang

20 member known to the Grand Jury that defendant BALLESTEROS was

21 involved in a fight between a rival gang member from the Duarte

22 street gang and an unindicted El Monte Flores gang member in

23 Huntington Beach, California, because the Duarte gang did not

24 handle a gang dispute properly.

25     297. On October 18, 2012, defendant LOMELI sold

26 approximately 81.8 grams of methamphetamine to an El Monte

27 Flores gang member known to the Grand Jury in exchange for

28 $1,500.

298. On October 23, 2012, defendant A. HERNANDEZ possessed a loaded 12-gauge shotgun and fled from law enforcement officers through El Monte Flores gang territory.

299. On October 30, 2012, defendant COFER sent $60 in extortionate taxes collected by the El Monte Flores gang to Mexican Mafia member C.A. via Moneygram.

300. On November 3, 2012, in a telephone conversation using coded language, defendant R. SANCHEZ told defendant J. GUTIERREZ that defendant R. SANCHEZ told unidentified El Monte Flores gang members to send taxes they collected directly to defendant J. GUTIERREZ.

301. On November 18, 2012, in a telephone conversation using coded language, defendant ROBERT RODRIGUEZ told Mexican Mafia member R.S. that defendant ROBERT RODRIGUEZ had spoken to defendant M. CORTEZ but defendant M. CORTEZ was still collecting taxes and causing problems in El Monte Flores gang territory.

302. On January 3, 2013, defendant VALENCIA and unindicted co-conspirators possessed a loaded 9mm firearm and approximately .2 grams of methamphetamine in a truck, and they led law enforcement officers on a high-speed car chase through El Monte Flores gang territory.

303. On April 10, 2013, defendant MACHADO possessed two loaded .380 caliber firearms, a loaded 20-gauge sawed-off shotgun, and a silver "F" belt buckle in El Monte Flores gang territory.

304. On April 19, 2013, defendant BALLESTEROS and four unindicted co-conspirators attacked victims R.A., R.C., and E.C. at the "Sunset Room," in Hacienda Heights, California, because

1  defendant BALLESTEROS believed that R.A., R.C., and E.C. had

2  shown disrespect to defendant BALLESTEROS and the El Monte

3  Flores gang.

4      305. On September 17, 2013, defendant A. HERNANDEZ

5  possessed approximately 3.28 grams of methamphetamine while

6  driving a stolen vehicle in El Monte Flores gang territory.

7      306. On November 7, 2013, defendant RIVERA met a law

8  enforcement confidential informant ("CI-5") at the Boys & Girls

9  Club of America and collected $100 in extortionate taxes from

10 CI-5, told CI-5 that the taxes were going to be sent to Mexican

11 Mafia member C.A., and offered to sell drugs to CI-5.

12     307. On December 11, 2013, defendant RIVERA met CI-5 at the

13 Boys & Girls Club of America and offered to sell drugs to CI-5,

14 and defendant RIVERA told CI-5 that defendant RIVERA would

15 protect CI-5 from an unidentified co-conspirator if CI-5

16 purchased drugs from defendant RIVERA.

17     308. On January 9, 2014, in a telephone conversation using

18 coded language, defendant RIVERA told an unidentified co-

19 conspirator that defendant RIVERA and CI-5 would drive to the

20 unidentified co-conspirator's house to purchase methamphetamine.

21     309. On January 9, 2014, defendant RIVERA and an

22 unidentified co-conspirator sold approximately 54.3 grams of

23 methamphetamine to CI-5 in El Monte Flores gang territory.

24     310. On January 9, 2014, defendant RIVERA authorized CI-5

25 to sell drugs in El Monte Flores gang territory after defendant

26 RIVERA collected $100 in extortionate taxes from CI-5, and

27 defendant RIVERA told CI-5 that defendant RIVERA carried a .22

28

1   caliber firearm and would protect CI-5 from harm while CI-5 sold

2   drugs in El Monte Flores gang territory.

3      311. On March 31, 2014, defendant SIERRA and an unindicted

4   co-conspirator hid a .22 caliber Derringer pistol in defendant

5   SIERRA's trailer, located in El Monte Flores gang territory, and

6   defendant SIERRA and the unindicted co-conspirator attempted to

7   flee from defendant SIERRA's trailer when law enforcement

8   approached it.

9      312. On April 11, 2014, defendant MUNOZ possessed

10  approximately 18.13 grams of methamphetamine, a digital scale,

11  and $2,810 in U.S. currency.

12     313. On June 9, 2014, defendant A. HERNANDEZ fled from law

13  enforcement while in possession of approximately 9.2 grams of

14  methamphetamine, 4.6 grams of heroin, and 3.3 grams of cocaine

15  in El Monte Flores gang territory.

16     314. On June 12, 2014, defendant RICHARD RODRIGUEZ and an

17  unindicted co-conspirator posted a picture of defendant RICHARD

18  RODRIGUEZ flashing gang signs to Facebook to show his continued

19  allegiance to the El Monte Flores gang.

20

21            THE GRAND JURY FURTHER ALLEGES THAT:

22     1.   Beginning on a date unknown to the Grand Jury, and

23  continuing to the date of this Indictment, in Los Angeles

24  County, within the Central District of California, and

25  elsewhere, defendants J. GUTIERREZ, R. SANCHEZ, ROBERT

26  RODRIGUEZ, COFER, RUIZ, RIVERA, M. GARCIA, JARA, M. GUTIERREZ,

27  MATA, SALAS, LAFARGO, BALLESTEROS, R. LOPEZ, J. GARCIA, MACHADO,

28  MCCORMICK, LOMELI, TRINIDAD, M. CORTEZ, B. CORTEZ, E. LOPEZ,

1  JURADO, VALENCIA, MUNOZ, GOMEZ, BESERRA, RICHARD RODRIGUEZ,

2  CORDERO, CADENA, A. HERNANDEZ, PONCE, BOWERS, SALAZAR, SIERRA,

3  CASTELLANO, and RAMIREZ, and others known and unknown to the

4  Grand Jury, conspired and agreed with each other to knowingly

5  and intentionally (i) possess with intent to distribute, and

6  (ii) distribute:  at least 50 grams of methamphetamine, a

7  Schedule II controlled substance, and at least one kilogram of a

8  mixture or substance containing a detectable amount of heroin, a

9  Schedule I narcotic drug controlled substance, all in violation

10  of Title 21, United States Code, Sections 846, 841(a)(1), and

11  841(b)(1)(A).

12      2.   On or about December 24, 2010, in Los Angeles County,

13  within the Central District of California, defendant MATA and

14  others, unlawfully, willfully, deliberately, and with

15  premeditation killed with malice aforethought rival gang member

16  D.D. in violation of California Penal Code Sections 31, 187, and

17  189.

18      3.   On or about April 21, 2012, in Los Angeles County,

19  within the Central District of California, defendant MATA, and

20  others known and unknown to the Grand Jury, willfully,

21  deliberately, and with premeditation, unlawfully attempted to

22  kill with malice aforethought T.S., in violation of California

23  Penal Code Sections 21a, 31, 187, 189, and 664.

24      4.   On or about August 8, 2010, in Los Angeles County,

25  within the Central District of California, defendant SALAS

26  willfully, deliberately, and with premeditation, unlawfully

27  attempted to kill with malice aforethought defendant LAFARGO and

28

1   A.B., in violation of California Penal Code Sections 21a, 187,

2   189, and 664.

3        5.   On or about August 8, 2010, in Los Angeles County,

4   within the Central District of California, defendant LAFARGO,

5   and others known and unknown to the Grand Jury, willfully,

6   deliberately, and with premeditation, unlawfully attempted to

7   kill with malice aforethought defendant SALAS, in violation of

8   California Penal Code Sections 21a, 31, 187, 189, and 664.

9        6.   Beginning on a date unknown, and continuing to on or

10  about August 8, 2010, in Los Angeles County, within the Central

11  District of California, defendant LAFARGO, and others known and

12  unknown to the Grand Jury, conspired to kill with malice

13  aforethought defendant SALAS, in violation of California Penal

14  Code Sections 182, 187, and 189.

15       All in violation of Title 18, United States Code, Section

16  1962(d).

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TWO

[18 U.S.C. § 1959(a)(1)]

1.   At all times relevant to this Indictment, the El Monte
Flores gang, as described more particularly in Paragraphs One
through Eighteen of the General Allegations of this Indictment,
which paragraphs are re-alleged and incorporated by reference as
if fully set forth herein, constituted an enterprise, as that
term is defined in Title 18, United States Code, Section
1959(b)(2), that is, a group of individuals associated in fact
which was engaged in, and the activities of which affected,
interstate and foreign commerce.  The enterprise constituted an
ongoing organization whose members functioned as a continuing
unit for a common purpose of achieving the objectives of the
enterprise.

2.   At all times relevant to this Indictment, the El Monte
Flores gang, through its members and associates, engaged in
racketeering activity, as defined in Title 18, United States
Code, Sections 1959(b)(1) and 1961(1), that is, acts involving
murder, robbery, and extortion, in violation of the California
Penal Code; and offenses involving the distribution of
controlled substances, including methamphetamine, heroin,
cocaine, and crack cocaine, in violation of Title 21, United
States Code, Sections 841(a)(1) and 846.

3.   On or about December 24, 2010, in Los Angeles County,
within the Central District of California, for the purpose of
maintaining and increasing position in the El Monte Flores gang,
an enterprise engaged in racketeering activity, defendant JOHNNY
MATA, also known as "Minor," murdered victim D.D. with malice